Harry Rubin & Sons, Inc., Appellant, *v.* Consolidated Pipe Company of America, Inc.

Argued April 23, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Alfred L. Luongo,* with him *Morris L. Weisberg, Goncer M. Krestal,* and *Blank, Rudenko, Klaus & Rome,* for appellants.

*Harry R. Kozart,* with him *Milton H. Weissman,* and *Weissman & Kozart,* for appellees.

Opinion by Mr. Justice Benjamin R. Jones, July 24, 1959:

This is an appeal from the action of the Court of Common Pleas No. 1 of Philadelphia County, which

sustained, in part, the appellees'[1] preliminary objections to the appellants'[2] complaint in assumpsit.

Rubin-Arandell, in their complaint, alleged that on three different dates—August 22nd, 25th and 28th, 1958—they entered into three separate oral agreements, all for the sale of goods in excess of $500, with one Carl Pearl, an officer and agent of Consolidated-Lustro, for the purchase of plastic hoops and materials for use in assembling plastic hoops, and that Consolidated-Lustro failed to deliver a substantial portion of the hoops and material as required by the terms of the oral agreements. The court below, passing upon Consolidated-Lustro's preliminary objections, held that two of the alleged oral agreements violated the statute of frauds provision of the Uniform Commercial Code[3] and were unenforceable. Rubin-Arandell contend that certain memoranda[4] (attached as exhibits to the com-

---

[1] Consolidated Pipe Company of America, Inc., Lustro Plastic Tile Company, Inc. and Lustro Tile Products Company, Inc. (herein termed Consolidated-Lustro) are the appellees.

[2] Harry Rubin & Sons, Inc. and Leonard Rubin and Robert Rubin, t/a Arandell Products Company (herein termed Rubin-Arandell) are the appellants.

[3] Act of April 6, 1953, P. L. 3, §2-201, 12A PS §2-201.

[4] "PURCHASE ORDER . . .

Lustro Plastic Tile Company     No. 2859
     General Office & Warehouse
        1066 Home Avenue
        AKRON 10, OHIO
        POrtage 2-8801

Ordered From
     Consolidated Pipe Co.
                Date
                Ship to

Ship when        Route Via           FOB

| Quantity | Number | Description | Price |
|---|---|---|---|
| 30,000 | | Hoops Te-Vee | 36½c |
| | | Red, Green, Blue | |
| | | as per sample | |

plaint) were sufficient to take both oral agreements out of the statute of frauds. Rubin-Arandell also contend that the court below erred in rejecting their claim for damages for loss of good will because of their inability to supply their customers with plastic hoops by reason of Consolidated-Lustro's breach of the agreements.

The statute of frauds provision of the Uniform Commercial Code, supra, states: "§2-201. Formal Requirements: Statute of Frauds (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his author-

From Lengths 8'-10"
to 9'-3"      So they can
nest
LUSTRO PLASTIC TILE CO.
By /s/   HARRY RUBIN & SONS INC."
Leonard R. Rubin, V. Pres.

"Consolidated Pipe Co.                                    August 25, 1958
1066 Homes Ave.
Akron, Ohio.
Att: Mr. Carl Pearl
Dear Carl,

As per our phone conversation of today kindly enter our order for the following:

> 60,000 Tee-Vee Hoops made of rigid polyethylene tubing from lengths of 8' 10" to 9' 2"; material . to weigh 15 feet per lb., colors red, green and yellow packed 2 Dozen per carton

39c each

It is our understanding that these will be produced upon comp[l]etion of the present order for 30,000 hoops.

Very truly yours,
HARRY RUBIN & SONS, INC.
/s/   Leonard R. Rubin, Vice-pres."

ized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received."

As between merchants, the present statute of frauds provision (i.e. under §2-201(2), supra) significantly changes the former law by obviating the necessity of having a memorandum signed by the party sought to be charged. The present statutory requirements are: (1) that, within a reasonable time, there be a writing in confirmation of the oral contract; (2) that the writing be sufficient to bind the sender; (3) that such writing be received; (4) that no reply thereto has been made although the recipient had reason to know of its contents. Section 2-201 (2) penalizes a party who fails to "answer a written confirmation of a contract within ten days" of the receipt of the writing by depriving such party of the defense of the statute of frauds.[5]

The memoranda upon which Rubin-Arandell rely consist of the purchase order on the Lustro form signed by Rubin stating the quantity ordered as 30,000 hoops with a description, the size and the price of the hoops listed and the letter of August 25th from Rubin to Consolidated requesting the entry of a similar order for an additional 60,000 hoops at a fixed price: "As per our phone conversation of today." This letter closes with the significant sentence that: "It is our understanding that these [the second order for 60,000

---

[5] Comment to §2-201, 12A PS p. 87.

hoops] will be produced upon completion of the present order for 30,000 hoops."

Consolidated-Lustro's objection to the memoranda in question is that by employment of the word "order" rather than "contract" or "agreement, the validity of such memoranda depended upon acceptance thereof by Consolidated-Lustro and could not be "in confirmation of the contract[s]" as required by §2-201 (2). We believe, however, that the letter of August 25th sufficiently complies with §2-201 (2) to remove both oral contracts from the statute of frauds. The word "order" as employed in this letter obviously contemplated a binding agreement, at least, on the part of the sender, and in all reason, should have been interpreted in that manner by the recipient. The sender in stating that "It is our understanding that these will be produced upon completion of the present order for 30,000 hoops," was referring to the initial order as an accomplished fact, not as an offer depending upon acceptance for its validity. Any doubt that may exist as to the sender's use of the word "order" is clearly dispelled by its use in the communication confirming a third contract.[6] This letter of August 28th, 1958, states: "Pursuant to our phone conversation of yesterday, *you may enter our order* for the following [number, description and price] . . . . *This order is to be entered* based upon our phone conversation, in which you *agreed* to ship us your entire production of this Hoop material at the above price. . . ." (Emphasis supplied) The letter of August 25th was a sufficient confirmation in writing of the two alleged oral contracts, and, in the absence of a denial or rejection on the part of the recipient within ten days, satisfied the requirements of

---

[6] As to this alleged oral contract, the court below held Consolidated-Lustro's defense of the statute of frauds provision was without merit.

§2-201 (2) of the Uniform Commercial Code.

Under the statute of frauds as revised in the Code "All that is required is that the writing afford a basis for beliving that the offered oral evidence rests on a real transaction." [7] Its object is the elimination of certain formalistic requirements adherence to which often resulted in injustice, rather than the prevention of fraud. The present memoranda fulfill the requirement of affording a belief that the oral contracts rested on a real transaction and the court below erred in holding otherwise. Nor are Consolidated-Lustro harmed by such a determination since Rubin-Arandell must still sustain the burden of persuading the trier of fact that the contracts were in fact made orally prior to the written confirmation.[8]

Rubin-Arandell further contend that the loss of the good will of their customers caused by Consolidated-Lustro's failure to supply the hoops is a legitimate item of damage under the consequential damage provision of the Code.[9]

Section 2-715 of the Code which provides for consequential damages for both a breach of warranty and for nondelivery, states: ". . . (a) Consequential damages include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . ." Our research fails to reveal any ju-

---

[7] See: "Uniform Commercial Code Comment" under "Purpose of Changes 1", 12A PS §2-201.

[8] Appellees also argue that parties not named in the communications cannot be bound. Oral testimony to establish that the addressee of the letter was an agent of the unnamed appellees is admissible and does not violate the Statute of Frauds. See: *Penn Discount Corp. v. Sharp*, 125 Pa. Superior Ct. 171, 189 A. 749.

[9] Act of April 6, 1953, P. L. 3, §2-715, 12A PS, §2-715.

dicial authority in Pennsylvania which sustains, under the Sales Act, a recovery for a loss of good will occasioned either by nondelivery or by the delivery of defective goods.[10] As this Court stated in *Michelin Tire Co. v. Schulz,* 295 Pa. 140, 144, 145 A. 67: "So far as appears, the tires in question were all used by defendant's customers and paid for, so he lost nothing thereon. What he claims is that because the tires were less durable than recommended he lost customers, which otherwise he would have retained and whose business would have netted him a profit. . . . This is entirely too speculative and not the proper measure of damages." There is no indication that the Uniform Commercial Code was intended to enlarge the scope of a buyer's damages to include a loss of good will. In the absence of a specific declaration in this respect, we believe that damages of this nature would be entirely too speculative, and that the court below acted properly in sustaining Consolidated-Lustro's objections thereto.[11] We are in agreement with the statement of the Court in *Armstrong Rubber Co. v. Griffith,* 43 F. 2d 689, 691, that: "If the plaintiff here can recover for loss of good will, it is difficult to see what limits are to be set to the recovery of such damages in any case where defective goods are sold [or where goods are not delivered] and the vendee loses customers. Indeed, if such were the holding, damages which the parties never contemplated would seem to be involved in every contract of sale."

---

[10] Appellants rely on *Sarfert Hosiery Mills, Inc. v. Parayarn Co.,* 75 Pa. D. & C. 58, in support of their claim to such damages. The issue in that case was whether or not such a claim was averred with sufficient specification. The court assumed without discussion or citation of authority that recovery could be had for a loss of good will. Under these circumstances, we do not believe that this case is authority for appellants' contention.

[11] For cases contra see: Note, 28 A.L.R. 2d 580.

The order of the court below, as modified, is affirmed and the record remanded for proceedings consistent with this opinion.