**Cohen Salvage Corp. v. Eastern Electric Sales Co.**

*Samuel Kravitz,* for plaintiff.

*A. Martin Herring,* for defendant.

DOTY, J., August 25, 1964.—This action in assumpsit is presently before the court on defendant's exceptions to the verdict in favor of plaintiff rendered by the trial judge sitting without a jury.

After a careful consideration of the record and the applicable law, we are of the opinion that defendant's exceptions must be dismissed.

The undisputed facts are as follows:

In the latter part of June, 1963, plaintiff, located in Bladensburg, Maryland, and defendant, located in Philadelphia, both acting by a duly authorized agent, had a telephone conversation in which plaintiff advised defendant that it had a quantity of electric cable for sale. Arrangements were made for defendant to send one of its employes to Bladensburg, Maryland, to examine the cable. After this employe examined the cable and returned to Philadelphia, another oral conversation transpired as a result of which plaintiff shipped the cable, weighing 36,440 pounds, to defendant in Philadelphia. The cable was run off plaintiff's reels to defendant's reels, and was taken by defendant's employes and placed in defendant's warehouse, where it still remains.

There is a sharp dispute as to the contents of the two telephone conversations between the parties, particularly the second conversation. Plaintiff alleges that the parties entered into a valid and binding contract in the second conversation, plaintiff agreeing to sell and defendant agreeing to buy the cable. The price was to be 21 cents per pound, except that defendant was to pay 24 cents per pound for the copper content only for

those pieces of cable less than 50 feet in length. Plaintiff also alleges that the shipping costs were to be borne equally by the parties.

On the other hand, defendant contends that there was no agreement to purchase the cable but that the parties agreed that plaintiff was to ship 36,440 pounds of cable from Bladensburg, Maryland, to Philadelphia. Defendant was then to examine the cable and purchase only that quantity it determined it could use. Defendant's president, who had the telephone conversation in question, did admit that the price was to be as alleged by plaintiff and also admitted that the shipping costs were to be paid equally.

Plaintiff brought this action in assumpsit for the cable allegedly sold and delivered. Defendant's position at trial was two-fold: (1) There was no contract between the parties, and (2) even if there was a contract it is unenforceable because of the statute of frauds.

The first defense has been virtually abandoned by defendant in its brief and oral argument in support of its exceptions. The defense is a factual one and the trial judge, after seeing the witnesses and hearing the testimony is convinced that the parties did enter into a contract for the sale of the cable. Moreover, the surrounding facts and circumstances give credence to this. It is hardly conceivable, as defendant would have the court believe, that after two telephone conversations and inspection by defendant's employes at plaintiff's warehouse, plaintiff would ship 36,440 pounds of cable from Maryland to Philadelphia without a firm sale, and with nothing even arranged as to when or how, or at whose cost, the goods were to be returned in the event of rejection by defendant, and without any agreement or understanding concerning what other disposition would be made of the cable, or any part of it, which defendant would reject.

In addition, defendant never did notify plaintiff of its rejection of the cable until approximately one month after it had admittedly received it, and then only in response to a letter received from plaintiff's counsel demanding payment. It is also significant that defendant's agent was given a full opportunity to inspect the cable in plaintiff's warehouse. He admitted on cross-examination that he never complained to plaintiff that he did not have such an opportunity. He also acknowledged that he was not pressured or hurried and was given all the time he wanted to make that inspection. Under these circumstances no useful purpose could have been served by a second inspection in Philadelphia. This also gives credence to plaintiff's version of the facts.

Defendant introduced into evidence its firm purchase order on which appeared, inter alia, a date, June 29, 1963, and a statement that defendant would only pay for cable it could use. Defendant's president testified that he sent this form to plaintiff. However, this form was not addressed correctly, but was addressed to "Julian Costen." It is undisputed that there is no such person involved in this case. Therefore, since this purchase order was not addressed correctly there can be no presumption that it was ever received by plaintiff. See Cameron Estate, 388 Pa. 25 (1957); Higgins Lumber Company v. Marucca, 159 Pa. Superior Ct. 405 (1946). There is no evidence that the letter was ever received by plaintiff. Therefore, it can have no probative value.

Defendant's reliance on the statute of frauds to vitiate this contract is misplaced. Section 2-201(1) of the Uniform Commercial Code, 12A PS §2-201(1), provides that a contract for the sale of goods in excess of $500 is not enforceable

". . . unless there is some writing sufficient to indicate that a contract for sale has been made between

the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."

In this case plaintiff introduced into evidence a written sales order which contained plaintiff's name, the notation, "SOLD TO: Eastern Electric," the date, the name of the shipper, the quantity and description of the goods, and the weight of the goods, as well as the notation, "Your Order Number," and "Our Sales Number." This form was admittedly signed by an authorized agent of the defendant's company. This writing was sufficient to satisfy the requirements of the statute of frauds.

"All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." Uniform Commercial Code, Comment to section 201.

See also Harry Rubin and Sons, Inc. v. Consolidated Pipe Company of America, Inc., 396 Pa. 506 (1959).

As stated in that case, at page 512:

"Its object is the elimination of certain formalistic requirements, adherence to which often resulted in injustice, rather than the prevention of fraud."

This writing clearly afforded a basis for believing that the oral evidence rests on a real transaction. The fact that price was omitted, and it was the only relevant term omitted, is not fatal since "A writing is not insufficient because it omits . . . a term agreed upon . . .": 12A PS §2-201(1). See also Pennsylvania Bar Association Notes to this section.

There is another reason why the statute of frauds does not preclude a verdict for plaintiff in this case. Section 2-201(3)(c) of the Code (12A PS §2-201(3)(c)) provides:

"A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects

is enforceable . . . with respect to goods which have been received and accepted."

That the cable was received there can be no doubt. After it was received by defendant it was run from one reel to another by several of the defendant's employes who admitted they inspected it at that time. It was then tagged and placed in defendant's warehouse, where it remains.

In order to avoid the conclusion that defendant had accepted the cable, defendant offered testimony that it had notified plaintiff of its rejection shortly after the cable was received. However, there was no written notice of rejection. Moreover, the testimony that defendant notified plaintiff of the rejection of these goods is not credible, particularly in view of the fact that defendant still has the cable in its possession and has never offered to return it or attempted to return it to the plaintiff.

Therefore, in view of its failure to act with respect to the cable, it is clear that defendant accepted the goods in question and a valid and enforceable contract exists between the parties: Section 2-606 (1) (b) and section 2-602 of the Uniform Commercial Code 12A PS §2-606 (1) (b) and 12A PS §2-602.

There is due and owing plaintiff the sum of $7,200.11, including interest to the date of the verdict, for goods sold and delivered under the terms of the contract and the court entered a verdict for this amount.

Accordingly, and for the foregoing reasons, defendant's exceptions to the findings and verdict of the trial judge are dismissed.