**DORAL HOSIERY CORPORATION**

v.

**SAV–A–STOP, INC.**

Civ. A. No. 72–711.

United States District Court,
E. D. Pennsylvania.

March 28, 1974.

C. Gary Wynkoop, Schnader, Harrison, Segal & Lewis, Philadelphia Pa., for plaintiff.

Thomas M. Kittredge, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Plaintiff, Doral Hosiery Corporation, (hereinafter referred to as Doral) brought this action against the defendant, Sav-A-Stop, Inc., (hereinafter referred to as Sav-A-Stop) for damages resulting from breach of contract.

The plaintiff's Complaint contains two counts. The first count avers that Sav-A-Stop did not pay the full contract price for merchandise sold and delivered to it by Doral. The second count avers that Sav-A-Stop did not purchase a sufficient quantity of merchandise from Doral to satisfy the terms of the contract.

Presently before the Court is the Motion of the defendant, Sav-A-Stop, for partial summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. This Motion is directed to Count II of the Complaint.

An understanding of the chain of distribution in the women's hosiery industry and the relevant roles of the parties therein is necessary to an understanding of the legal issues raised by the defendant's Motion.

## INTRODUCTION

The chain of distribution in the women's hosiery industry includes a manufacturer, a service merchandiser, and a retail outlet store. In the case at bar, Doral is a manufacturer and Sav-A-Stop is a service merchandiser. A service merchandiser buys its line (brand) of hosiery from a manufacturer and sells it to a retail store as needed or, as alleged here, on a programmed sale basis. The programmed sale basis enables a service merchandiser to buy its line of hosiery from one manufacturer and induce its retail store customers to carry that line of merchandise. When a service merchandiser acquires a new retail store account, the service merchandiser often repurchases the retail store's existing inventory and replaces it with the programmed merchandise. In order to dispose of this non-programmed inventory the merchandiser resells it to the manufacturer. To induce the manufacturer to purchase such non-programmed inventory it is customary for the service merchandiser to agree to purchase its requirements of that manufacturer's line of products for a period of time sufficient to enable the manufacturer to recoup these losses with profits on subsequent sales to the service merchandiser. It is this kind of arrangement between a manufacturer and a service merchandiser which is the subject matter of the action.

## CONTENTIONS

Doral contends that it agreed to accept for credit, returns of non-programmed merchandise from Sav-A-Stop in exchange for Sav-A-Stop's promise to purchase a sufficient amount of hosiery from Doral to exhaust these credits.

Sav-A-Stop contends that this action is barred by the Statute of Frauds provision of the Uniform Commercial Code (hereinafter referred to as the Code) Article II, 12A Pa.Stat.Ann. § 2–201.

Doral counters by producing six letters, appended hereto as exhibits A through F, which it contends are sufficient confirmation of a prior oral contract to overcome Sav-A-Stop's defense.

## ISSUES

When, as here, both parties to the alleged oral contract are merchants, the formal requirements of the Statute of Frauds are:

(1) that within a reasonable time, there be a writing in confirmation of the oral contract;

(2) that the writing be sufficient to bind the sender;

(3) that such a writing be received;

(4) that no reply thereto has been made although the recipient has reason to know its contents.[1]

---

1. Harry Rubin & Sons v. Consolidated Pipe Co. of America, 396 Pa. 506, 510, 153 A.2d 472 (1959).

■ The reason for the provision that between merchants one must send written notice of objection to a writing received in confirmation of a prior oral contract is to deprive the party who fails to object the defense of the Statute of Frauds which otherwise would allow him the option of enforcing the contract if it were to his advantage or refuse to honor the contract if it were to his detriment.

Sav-A-Stop contends that the six writings fail to satisfy the requirements of the Statute of Frauds because: (1) they are not confirmations of a prior oral contract and (2) they are not sufficient against the sender because they contain no quantity term.

Thus, the issue before the Court is two fold: Do the writings evidence a prior oral contract and do they state the quantity of goods for which the parties contracted?

## CONFIRMATION OF A PRIOR ORAL CONTRACT

■ To be a confirmation of a prior oral contract the writing needn't expressly state that it is sent in confirmation of the prior transaction, but it must state that a binding or completed transaction has in fact been made.[2] In addition, "several writings may be considered in combination and the Statute of Frauds is satisfied if the writings so conjoined meet the requirements of the Code."[3] Furthermore, we are mindful that "all that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction."[4]

■ The six writings obviously indicate an ongoing buyer-seller relationship predicated on a "real transaction." It is just as obvious from a reading of these writings that many terms of the trans-

action are unknown. This fact, however, is not fatal. The law is well-settled that ambiguous or missing terms of a contract may be shown by a course of dealing between the parties as well as the custom and usage of the trade.[5] Although this fact is true, it is not true of a missing quantity term. The Code clearly states that "the contract is not enforceable . . . beyond the quantity of goods shown in such writing."[6] Thus, whether the six writings evidence the quantities for which the parties contracted is the crucial issue before the Court.

## QUANTITY OF GOODS

■ "The requirement that the writing state a quantity is mandatory, and a writing which fails to do so does not satisfy the Statute of Frauds."[7]

An examination of the six writings reveals that the credits which Doral issued to Sav-A-Stop were apportioned on a price per dozen basis depending on the style of the hosiery purchased. For example, exhibit F states that Sav-A-Stop will receive a 50¢ credit per dozen of hosiery styles 974 and 970, and a 25¢ per dozen of hosiery style 3005. Exhibit F also states that as of June 23, 1971 Sav-A-Stop had amassed $26,730.32 in credits.

To support is position that the quantity term. can be deduced from the six writings, Doral argues that if the total amount of credits is known, it takes but a simple mathematical equation to compute the quantity of hosiery necessary to exhaust the credits.

Unfortunately for Doral, this equation has too many unknowns for resolution. It is impossible to determine the total quantity of hosiery necessary to exhaust the credits when the amount of the credit per dozen varies with the style of the

2. Anderson, Uniform Commercial Code, § 2–201:51 at page 284 (2nd edition 1970).

3. *Id.* § 2–201:28 at page 268.

4. Harry Rubin & Sons v. Consolidated Pipe Co. of America, 396 Pa. 506, 512, 153 A.2d 472, 476 (1959), quoting from the Official

Comments, Uniform Commercial Code, § 2–201.

5. 12A. Pa.Stat.Ann. § 1–205(3).

6. 12A. Pa.Stat.Ann. § 2–201(1).

7. Anderson, Uniform Commercial Code, § 2–201:24 at page 266 (1959).

hosiery. Obviously, it would take twice as many dozen of style 3005 as style 974 or 970 to exhaust the same amount of credits.

Moreover, in paragraph 19 of their Complaint, Doral states that future sales to Sav-A-Stop could be apportioned among the various hosiery styles on a ratio of past sales. Such a speculative approach underscores the absence of a definitive quantity term.

■ For the foregoing reasons we conclude that there is no quantity term in the writings submitted by Doral. It follows therefrom that the requirements of the Statute of Frauds have not been satisfied. Therefore, the Motion of the defendant, Sav-A-Stop, for partial summary judgment as respects Count II of the plaintiff's Complaint is granted.

## ORDER

And now, this 28th day of March, 1974, it is ordered that the Motion of the defendant, Sav-A-Stop, for partial summary judgment as respects Count II of the plaintiff's Complaint is granted.

## APPENDIX

## EXHIBIT "A"

January 22, 1971

Mr. Sherrill W. Vance
Sav-A-Stop, Inc.
2001 Apperson Drive
Salem, Virginia   24153

Dear Sherrill:

As per our conversation concerning your debit memo 13475 in the retail amount of $19,258.51, I have spoken to the people at Stevens and at Amerex, and we will take this return from you although, as I stated, some of this merchandise is not from any of the stores in the New York area. Since I don't want to belabor the issue, we will take it all in and give you credit for it.

Based on the fact that on panty hose you are averaging between cost and retail 60% mark-up, on this particular order your credit would be in the amount of $7,703.22. In order to give you credit in this amount, we will reduce your cost on Style 970 and Style 974 panty hose by 50¢ per dozen until we have issued you the proper credit.

On your order #021585 in the amount of 576 dozen, we will give you credit at 50¢ a dozen, which comes to $288 credit.

I will keep a running tabulation and let you know how you stand.

I trust this meets with your approval.

Cordially yours,

(s)  Leonard Thomas

LT:IA

cc–Mr. H. J. Maletz

APPENDIX

EXHIBIT "B"

April 6, 1971

Mr. Frank P. Wilson, Jr.
West Texas Wholesale of Amarillo, Inc.
6061 Plains Blvd., Box 2629
Amarillo, Texas   79105

Dear Frank:

As per our conversation concerning your return of assorted goods that you have picked up in a variety of stores, as listed below, we will do the following:

| Item | Quantity | Total Retail |
|---|---|---|
| Panty Hose, 99¢ to $3.98 | 1,428 pair | $ 2,391.59 |
| Regular Hosiery, 49¢ to $2.95 | 1,086 pair | 895.44 |
| Assorted Regular Hose and Panty Hose, 29¢ to $2.98 | 10,135 pair | 10,910.90 |
| | | $14,197.93 |

Using our formula of 60% markup, your cost on the above would be $5,679.20. We will allow you to amortize this at the rate of 50¢ per dozen on the following panty hose items only: Style 970, which is our $1.99 panty hose; Style 974, which is our $1.69 panty hose; and our Sheer-to-the-Waist, which is our $1.49 panty hose.

The amortization will work in the following manner: When I receive an order from you, I will bill you at the current price less 50¢ per dozen until you have amortized the $5,679.20. For instance, I am in receipt of your order #304020, which calls for 276 dozen of Style 974 panty hose. You will be billed at $8.30 less 50¢ per dozen. The credit of 50¢ a dozen on 276 dozen would be $138.00, which would leave you a balance of $5,541.20. I will keep a running total and let you know where you stand.

I hope that your people understand that this is not our merchandise and that in the future we cannot be responsible for such returns. In order that you fully understand our policy, we will accept for return any damaged merchandise that we produce. Overstocks and merchandise from other manufacturers we cannot be responsible for.

Best regards.

Cordially yours,

(s) Leonard Thomas

LT:IA
cc–Mr. Sam Bajalia

EXHIBIT "C"

April 16, 1971

Mr. G. A. Caldwell
Sav-A-Stop, Inc.
7660 Gainesville Avenue
Jacksonville, Fla. 32208

Dear Gerry:

I am in receipt of your debit memorandum 9539–J, which covers $19,-788.51 at retail of merchandise that you returned.

The difference between your cost for merchandise and your retail for merchandise that you buy from us is 60%. Therefore, on a retail factor of $19,788.51 you would have a cost factor of $7,915.40.

We will issue you a credit in the following manner only: On Style 974, our $1.69 panty hose, and on Style 970, our $1.99 panty hose, we will issue you a credit of 50¢ per dozen as follows:

On Style 974 you will be billed $8.30 less 50¢ per dozen.

On Style 970 you will be billed $9.50 less 50¢ per dozen.

We are presently working on a sheer-to-the-waist panty hose for hot pants, and if this is accepted by you, you will receive a 50¢ credit on this item also. Thus, when you have bought approximately 16,000 dozen panty hose, you will have amortized your returns.

To be more explicit, it will work in the following way: I am in receipt of your order #230430 dated April 13, calling for 816 dozen Style 974. You will be billed at $8.30 less 50¢ per dozen, or $408. This leaves a balance due you of $7,507.40.

Cordially yours,

(s) Leonard Thomas

LT:IA

cc–Mr. Sam Bajalia

APPENDIX

EXHIBIT "D"

May 7, 1971

Mr. Gerald A. Caldwell
Sav-A-Stop, Inc.
7660 Gainesville Avenue
Jacksonville, Fla. 32208

Dear Gerry:

Confirming our conversation today, this letter will authorize you to return 8,521 pair of nylons retailing 99¢ a pair and 3,477 pair nylons retailing 69¢ a pair to—

> Jo-Mill Hosiery Company
> 130 Eleventh Street, N. W.
> Hickory, North Carolina

As soon as I receive notification of the goods' arrival from them and the counts are substantiated, I will arrange credit to you from Doral Hosiery Corporation. As per my conversation with Sam Bajalia, the credit will work in the following manner:

$$8,521 \text{ pair @ } 99¢ = \$ 8,435.79$$
$$3,477 \text{ pair @ } 69¢ = \underline{2,399.13}$$
$$\text{Total} = \$10,834.92$$

Using our formula of 60% between cost and retail, you would then have a cost factor of $4,334. This will be credited to you at the rate of 50¢ a dozen on Styles 974 and 970. Also, as soon as we have the 99¢ panty hose, you will receive 25¢ a dozen on this product.

Cordially yours,

(s) Leonard Thomas

LT:IA

cc–Mr. Bajalia

APPENDIX

EXHIBIT "E"

May 14, 1971

Mr. Frank Wilson
West Texas Wholesale of Amarillo
6061 Plains Boulevard, P. O. Box 2629
Amarillo, Texas   79105

Dear Frank:

As per our conversation today, this is to authorize you to return the following hosiery to Jo-Mill Hosiery Company, 130–132 Eleventh Street, N. W., Hickory, North Carolina, 28601.  The credit will be issued from Doral Hosiery Corporation.

        Style 911 – 34,089 pairs at 69¢ a pair – total $23,521.41
        Style 814 –   2,014 pairs at 99¢ a pair – total     1,993.86
                                    Total ............ $25,515.27

Using our formula of 60% markup, you will receive $10,206.00 from Doral Hosiery Corporation.  This credit will be issued in the following manner:

    You will receive 50¢ a dozen on the following Styles—
        Style 970 – $1.99 panty hose
        Style 974 – $1.69 panty hose
        Sheer-to-the-waist panty house – $1.49
    You will receive 25¢ a dozen on the following—
        Style 3005 – 99¢ panty hose

You will continue to receive this form of credit through December 31 1971.  At that point, we will issue a total credit for any balance left.

                            Cordially yours,

                            Leonard Thomas

LT:cta

APPENDIX

EXHIBIT "F"

June 23, 1971

Mr. Bill Scott
Sav-A-Stop, Inc.
7660 Gainesville Avenue
Jacksonville, Fla.   32208

Dear Bill:

In order to bring you up to date on the return situation, I have broken down the various returns from your Divisions according to Division and have an amortization figure for you at this point in time.

Sav-A-Stop, Jacksonville:

On April 16, 1971, I issued credit in the amount of ... $ 7,915.40
This covered, basically merchandise that was discontinued by your various customers.

On May 7, 1971, I issued credit in the amount of ..... 4,344.00
This covered 69¢ and 99¢ hosiery that had been discontinued in your various stores.

Total Credits to Jacksonville ..................... $12,259.40

To date, using our formula of credit of 50¢ a dozen on Styles 970 and 974 and 25¢ a dozen on Style 3005, we have charged off to Jacksonville the amount of ... 2,364.00

Balance of Credits to Jacksonville ................ $ 9,895.40

Sav-A-Stop, Salem:

On January 22, 1971, I issued a credit in amount of ... $ 7,703.22
To the best of our knowledge, this was merchandise that was picked up from Gristede Bros. and some merchandise found in your warehouse when you moved from Roanoke to Salem.   To date, we have charged off ........................................ 5,282.00

This leaves a balance of ........................ $ 2,421.22

West Texas Wholesale of Amarillo:

On April 6, 1971, I issued credit in the amount of .... $ 5,679.20
This covered merchandise that was picked up from the various stores that you took over.

On May 14, 1971, I wrote a letter issuing credit of ... 10,206.00
This was the merchandise that you called me about. It covered hosiery and panty hose picked up from stores you took over.   Although our conversation took place in May, the merchandise was not shipped out until the end of June, and it did not arrive until the 22d of June.   The arrangements I had made to try to salvage some money out of this goods were washed out because of the length of time it took for this merchandise to be shipped out to me.  .   .   .   You had stated to me that since I took back the goods that

wasn't mine, only my hosiery would be put back into the racks this merchandise came out of. To date I still have not received any sheer-to-the-waist orders.

Total Credits to West Texas Wholesale . . . . . . . . . . . . .  $15,885.20
To date we have charged off . . . . . . . . . . . . . . . . . . . . . .   1,471.50
This leaves a balance due of . . . . . . . . . . . . . . . . . . . . . .  $14,413.70

In summation, we owe you:

Sav-A-Stop, Jacksonville . . . . .  $ 9,895.40
Sav-A-Stop, Salem . . . . . . . . . .   2,421.22
West Texas Wholesale . . . . . . .   14,413.70
Total . . . . . . . . . . . .  $26,730.32

I feel quite confident there will be no trouble washing these credits out in the coming season.

Cordially yours,

(s) Leonard Thomas

LT:IA