## Miluzzo v. Atlantic Richfield Company

*Sol H. Weiss, Gail P. Roth* and *Alan Starker,* for plaintiffs.

*Charles I. Thomas Jr., James D. Coleman* and *Steven L. Smith,* for defendant Atlantic Richfield Company.

HILL, *J.,* June 16, 1987—Plaintiffs claim to represent more than 150 gasoline dealers who were formally franchised under various agreements with ARCO to operate gasoline stations and mini-market convenience stores in Pennsylvania and New York.[1] Arco Chemical Company and Atlantic Refining and Marketing Corporation are named defendants to this action, but plaintiffs have stipulated that their complaint against these defendants should be withdrawn.

The remaining defendant, Atlantic Richfield, has filed preliminary objections in the nature of a demurrer to plaintiffs' complaint claiming that damages sought by plaintiffs are not recoverable as a matter of law in Pennsylvania. After careful review of the briefs of the parties, defendant's preliminary objections are sustained.

---

1. The within action has not yet been certified as a class action in accordance with Pa.R.C.P. §1701, et seq.

## I. FACTUAL BACKGROUND

Plaintiffs, through their franchise arrangements with Atlantic Richfield, purchase gasoline from ARCO and resell it to the general public under the ARCO brand name at a "mark-up" of between 3 to 12 cents per gallon. The gravamen of plaintiffs' complaint is that the introduction of oxinol[2] as a blending agent in ARCO's unleaded gasolines in 1982 caused customer dissatisfaction resulting in lost profits based upon a decreased sales volume. Plaintiffs do not claim that they were unable to resell gasoline purchased from ARCO or that they were forced to resell at a lower price,[3] rather, they claim that they would have bought and resold more gasoline had the use of oxinol as a blending agent in the gasoline product not caused customer dissatisfaction. In effect, the diminution of profits allegedly suffered was due to a loss of good will based upon an alleged change in public perception following the introduction of the oxinol-blended product.

It should be noted that defendant Atlantic Richfield implemented a number of controversial and revolutionary marketing decisions during the 1970's and 1980's.[4] In their complaint, plaintiffs ac-

---

2. Oxinol consists of 4.5 percent methanol (an alcohol produced primarily from natural gas) and 4.5 percent gasoline grade tertiary butyl alcohol (GTBA).

3. In fact, plaintiffs resold every gallon purchased from Atlantic Richfield at customary prices.

4. In 1975, ARCO became the first major oil company to launch self-service stations on a national basis. (complaint, paragraph 13). In the late 1970's ARCO decided to compete for customers on the basis of a lower price. (complaint, paragraph 14). Atlantic Richfield pioneered the mini-market convenience store concept to increase gasoline sales. (complaint, paragraph 14). In 1982, ARCO decided to eliminate credit card sales in order to further reduce prices. (complaint, paragraph 16).

knowledged and even praised Atlantic Richfield for its astute business judgment in implementing these concepts, all of which resulted in increased sales and profits to ARCO dealers. Plaintiffs' complaint concerns another marketing decision, the introduction of oxinol, which did not enjoy the same success as ARCO's other programs.

Plaintiffs frame their complaint against defendant in four counts:[5] (1) a contract claim for breach of warranty, (2) a tort claim alleging a breach of the implied duty to deal fairly, (3) a tort claim alleging a fraudulent misrepresentation of facts, and (4) count six does not state an independent cause of action, but seeks punitive damages based upon counts four and five. The compensatory damages sought in all counts are based upon a decreased sales volume or a loss of good will.

## II. DISCUSSION

Preliminary objections in the nature of a demurrer should be sustained only where, upon the facts pleaded, it is shown with certainty that the law will not permit a recovery by plaintiffs. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970); *Adler v. Helsel,* 344 Pa. 386, 25 A.2d 714 (1942); *Cummins v. Firestone Tire & Rubber Co.,* 344 Pa. Super. 9, 495 A.2d 963 (1985).

A demurrer admits as true all facts pleaded in plaintiff's complaint, "but not the pleader's conclusions or averments of law." *Adams v. Speckman,* 385 Pa. 308, 309, 122 A.2d 685 (1956), quoting,

---

5. The complaint contains six counts, but counts two and three concern ARCO Chemical Co. and ARMC which have been dismissed from the action by stipulations of the parties.

*Narehood v. Pearson*, 374 Pa. 299, 302, 96 A.2d 895 (1953).

The issue before the court is whether the law of Pennsylvania recognizes the type of damages sought by plaintiffs.

### A. *Count One: Contract Claim for Breach of Warranty*

Plaintiffs claim Atlantic Richfield breached an express warranty that its oxinol-blended gasolines were of high quality. As a result of said breach, plaintiffs seek to recover lost profits due to customer alienation or a loss of good will.

Pennsylvania law permits recovery for loss of profits where it was caused by plaintiff's inability to use property that was damaged, destroyed or withheld by defendant's wrongful conduct. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1226 (3d Cir. 1970), cert. denied, 91 S.Ct. 51, 400 U.S. 826, 27 L.Ed.2d 55.[6] However, Pennsylvania courts have carefully distinguished this type of loss from a loss of profits caused by customer dissatisfaction. As to the latter, the courts have concluded that losses stemming from customer alienation cannot be ascertained with reasonable certainty and are therefore unrecoverable as a matter of law. *Neville Chemical Co. v. Union Carbide Corp.*, supra; *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Harry Rubin & Sons Inc. v. Consolidated Pipe Co.*

---

6. For example, in *Kosco v. Hachmeister Inc.*, 396 Pa. 288, 152 A.2d 673 (1959), plaintiff was permitted to recover profits he lost when defendant's negligent conduct caused the destruction of his hotel. In *Watsontown Brick Co. v. Hercules Power Co.*, 387 F.2d 991 (3d Cir. 1968), aff'd, 265 F.Supp. 268 (M.D. Pa. 1967), plaintiff was permitted to recover profits lost while its plant was inoperative due to a blast caused by defendant's negligence.

*of Amer.,* 396 Pa. 506, 153 A.2d 472 (1959); *Michelin Tire Co. v. Schultz,* 295 Pa. 140, 145 A. 67 (1928).

In *Michelin Tire Co. v. Schultz,* supra, defendant, a Michelin Tire dealer, counterclaimed alleging a loss of profits on future sales he would have made had customers not become dissatisfied with plaintiff's product. The Pennsylvania Supreme Court held:

"[The] tires in question were all used by defendant's customers and paid for, so he lost nothing thereon. What he claims is that because the tires were less durable than recommended he lost customers, which otherwise he would have retained and whose business would have netted him a profit of the amount he sets up as a counterclaim. This is entirely too speculative and not the proper measure of damages." Id. at 144.

After the adoption of the Uniform Commercial Code in Pennsylvania, the Supreme Court of Pennsylvania in *Harry Rubin & Sons Inc. v. Consolidated Pipe Co. of Amer.,* supra, made it clear that the code was not intended to change the *Michelin* rule by expanding the scope of damages to include a loss of good will. The *Rubin* court, quoting *Armstrong Rubber Co. v. Griffith,* 43 F.2d 689, 691 (2d Cir. 1930) held:

"If plaintiff here can recover for loss of good will, it is difficult to see what limits are to be set to the recovery of such damages in any case where defective goods are sold [or where goods are not delivered] and the vendee loses customers. Indeed, if such were the holding, damages which the parties never contemplated would seem to be involved in every contract of sale." 396 Pa. at 512.

In *Kassab v. Central Soya,* supra, the Supreme Court affirmed an award of damages for loss of prof-

its due to a diminution in value of plaintiff's property caused by defendant's defective product, but carefully distinguished this type of damages from damages caused by a loss of good will. In a footnote the court noted:

"Recovery for the diminution in value of specific property caused by a refusal of the buying community to assign a market value to that property equal to what it was worth prior to its being affected by seller's defective product must not be confused with recovery for loss of good will to a business caused by community knowledge that seller's defective products were once used or sold by that business. Since the loss of good will cannot be measured by the diminution in value of any specific property belonging to the aggrieved buyer, unlike the present case, such good will loss is too speculative and hence not a compensable element of damages under section 2-715 of the code." Id. at 237, fn. 12 (citation omitted).

Plaintiffs at bar claim that the circumstances of their case are distinguishable from the cases of *Michelin, Rubin* and *Kassab* because, given the opportunity to amend, plaintiffs aver that they will be able to plead facts sufficient to prove their claims with reasonable certainty. Even if plaintiffs could set forth facts indicating that their losses were the direct result of blending oxinol into ARCO's gasolines,[7] Pennsylvania law does not recognize dam-

---

7. The court notes that in order to isolate the reputation of ARCO's oxinol brand as the cause of a decreased sales volume, each of the 150 dealers may have to provide that changes in dealer policies, traffic patterns in the neighborhood, quality of service offered, appearance of the premises, etc., did not cause or contribute to the decline.

ages in the form of lost profits due to customer dissatisfaction.

In *Neville Chemical Co. v. Union Carbide Corp.,* 294 F.Supp. 649 (W.D.Pa 1968) (applying Pennsylvania law), the court held that plaintiff had proved its damages stemming from a loss of good will with reasonable certainty. The Court of Appeals for the 3d Circuit reversed that portion of the district court's judgment and held:

"Under Pennsylvania law, a plaintiff may not recover for loss of profits to a business because of customer dissatisfaction or a loss of good will." 422 F.2d at 1225 (citations omitted).

". . . Whatever the law in other jurisdictions, the strong language in *Rubin* that, *'in the absence of a specific declaration . . . we believe that damages of this nature would be entirely too speculative,'* makes it appear that Pennsylvania courts would not award such damages in this case. . . ." Id. at 1227 (emphasis supplied).

The court of appeals in *Neville* went on to criticize the Pennsylvania rule by stating:

"This is not to say we approve the Pennsylvania view or believe it will be the Pennsylvania position in the future. Considering the advances made in techniques of market analysis and the use of highly sophisticated computers it may be that lost profits of this nature are no more speculative than lost profits from the destruction of a factory or hotel, and perhaps Pennsylvania will reconsider the reason for its rule in a future case. We are nonetheless required to apply the current rule in Pennsylvania." Id. at 1227-28.[8]

---

8. Plaintiffs contend that the rationale of this criticism is particularly applicable to the case at bar where, due to the exclusive nature of the agreements between the dealers and their supplier, ARCO, plaintiffs were unable to utilize the re-

This court is also required to follow the ·current Pennsylvania law which holds that damages sought under plaintiffs' breach of warranty claim due to a loss of good will are not recoverable as a matter of law.

B. *Counts Four, Five and Six: Tort Claims*

Plaintiffs seek recovery for economic losses to their businesses caused by an allegedly inferior product supplied by defendant Atlantic Richfield. Plaintiffs have framed their cause of action under both breach of contract and tort claims.

Distinct differences have evolved between tort and contract action at common law and these differences have been carefully preserved by Pennsylvania courts. Tort actions lie for a breach of social duty while contract actions are intended to compensate a party to an agreement for a breach of the duties imposed by the contract through the mutual consent of the contracting parties. The Supreme Court of Pennsylvania cautioned against mischaracterizing these two distinct legal concepts in the case of *Glazer v. Chandler*, 414 Pa. 304, 308-09, 200 A.2d 416, 418 (1964). The court stated:

"To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confu-

medial provision of 13 Pa.C.S. §2-715(2) which permits a buyer to purchase substitute goods in order to cover losses. Nevertheless, it would be inappropriate for this court to ignore over 50 years of Pennsylvania Supreme Court precedent. For further discussion, see Comment, Loss of Goodwill and Business Reputation as a Recoverable Element of Damages under Uniform Commercial Code §2-715-The Pennsylvania Experience. 75 Dick.L.Rev. 63 (1970); Peters, Remedies of Contract Relating to the Sale of Goods under the Uniform Commercial Code: A Roadmap for Article Two, 73 Yale L.J. 199 (1963).

sion into our well settled forms of actions. Most courts have been cautious about permitting tort recovery for contractual breaches and we are in full accord with this policy. See Developments in the Law — Competitive Torts, 77 Harv.L.Rev. 888, 968 (1964). The methods of proof and the damages recoverable in actions for breach of contract are well established and need not be embellished by new procedures or new concepts which might tend to confuse both the bar and litigants."

At bar, count four of plaintiffs' complaint pleads a tortious breach of a duty of good faith and fair dealing. In plaintiffs' answer to the within motion, it is admitted that, "under Pennsylvania law, '[e]very contract imposes upon each party a duty of good faith and fair dealings in its performance and enforcement.' "[9] Under 13 Pa.C.S. §1203 of the Uniform Commercial Code, "[e]very contract of duty within this title imposes an obligation of good faith in its performance or enforcement." 1979 Nov. 1, P.L. 255, No. 86 §1, effective Jan. 1, 1980.

Accordingly, if a duty to plaintiffs had been breached, under Pennsylvania law it was a breach of a contractual rather than a tortious duty. The purely economic damages sought by plaintiffs, if at all recoverable, can only be redressed in a contract action.

The court notes that plaintiffs may be attempting to transform a contract action into a tort action in order to add punitive damages to their claim or in order to avoid the rule in *Michelin* which prohibited recovery for damages caused by a loss of good will in

---

9. See plaintiffs' answer to defendant's preliminary objections, p.18 (citations omitted).

a contract case. In the court's opinion, such an attempt is not only improper, but futile since damages sought by plaintiffs are not recoverable under either tort or contract principles.

Although the cases of *Michelin, Rubin* and *Kassab* involved actions for breach of contract, the underlying principle that damages caused by a loss of good will are too speculative as a matter of law is equally applicable whether the case is labeled as tort or contract.

The Court of Appeals for the 3d Circuit in *Neville Chemical Co. v. Union Carbide Corp.*, supra, addressed the precise issue of whether the *Michelin* rule applied to tort claims under Pennsylvania law:

"Although the *Rubin, Kassab,* and *Michelin* cases involved damage claims for a breach of contract caused either by the non-delivery of goods or by the delivery of defective merchandise which did not involve allegations of negligence, there is also no authority in Pennsylvania allowing recovery for the loss of good will in a *tort* case. . . . *Kassab* and *Rubin* involved breach of warranty only, there is nothing to indicate that future profits or good will will be awarded if goods are defective because of defendant's negligence." 422 F.2d at 1227 (emphasis in original).

Regardless of the label attached to the cause of action at bar, all compensatory damages sought by plaintiffs stem from an alleged loss of good will. Such damages cannot be recovered as a matter of law according to the law of this state. See *Michelin, Rubin* and *Kassab*, supra.

Defendant's preliminary objections in the nature of a demurrer are sustained and plaintiffs' action is dismissed.