542 A.2d 90

**AM/PM FRANCHISE ASSOCIATION, Salvatore Miluzzo, Robert J. Williams, Robert E. Recotta, Paul Hastings and Thomas E. Doyle, Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1987.

Filed April 14, 1988.

Reargument Denied June 13, 1988.

Sol H. Weiss, Philadelphia, for appellants.

James D. Coleman, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY and BECK, JJ.

BECK, Judge:

The named plaintiffs claim to be representatives of a class comprised of over 150 gasoline dealers in Pennsylvania and New York who were franchised under agreements with defendant Atlantic Richfield Company.[1] Plaintiffs brought a breach of warranty action against Atlantic Richfield, including counts alleging fraud and breach of the duty of fair dealing. The gravamen of the complaint is that the introduction by Atlantic Richfield of Oxinol as a blending agent in ARCO brand gasoline caused the dealers to lose profits because of a decreased sales volume caused by customer dissatisfaction with the gasoline. Atlantic Richfield filed preliminary objections in the nature of a demurrer to plaintiffs' complaint. Atlantic Richfield claimed that the damages sought by plaintiffs, i.e., lost profits caused by the loss of customer satisfaction, are not recoverable as a matter of law in Pennsylvania. The trial court agreed and dismissed the action. We hold that such damages are not recoverable as a matter of law in the present case and, therefore, affirm the order of the lower court.

As a preliminary matter, the trial court notes in its opinion that the action had not yet been certified as a class action. This lack of formal certification does not affect the finality of the order entered below or of the status of this case on appeal. Rule 1707 of the Pennsylvania Rules of Civil Procedure provides that a motion for certification as a class action is to be filed thirty days after the pleadings are closed or after the last required pleading was due. Pa.R. Civ.R. 1707(a). The class determination is postponed until after the close of the pleadings to ensure that the class proponent is presenting a nonfrivolous claim capable of surviving preliminary objections. *Janicik v. Prudential*

1. Arco Chemical Company and Atlantic Refining and Marketing Corporation ("ARMC") are named defendants in this action, but the plaintiffs have stipulated that their complaint against these defendants should be withdrawn. The named plaintiffs are members of an association which was itself named a plaintiff. However, the plaintiffs have agreed that the association itself had no standing to sue and have voluntarily dismissed the association as a plaintiff.

*Insurance Co. of America,* 305 Pa.Super. 120, 451 A.2d 451 (1982). The Rule thus conserves valuable time and resources by postponing the certification determination until it is clear that the action will proceed. To require that such a determination must be made before the plaintiffs may appeal from an order sustaining preliminary objections in the nature of a demurrer would be superfluous. A certification of a class action does not join parties not yet in action. Rather, the class is in the action until properly excluded. *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975). The action is to be treated as a class action for the purpose of preliminary objections and also on the subsequent appeal of an order which sustains those objections and dismisses the complaint. *Sherrer v. Lamb,* 319 Pa.Super. 290, 466 A.2d 163 (1983). Therefore, this case is properly before this Court.

Plaintiffs' basic contention is that a retail dealer who must purchase all of his goods from one seller may recover lost profits as his compensatory damages when the seller delivers a defective or unmerchantable product for sale by the dealer. Plaintiffs had a franchise agreement with Atlantic Richfield which provided that each plaintiff dealer would purchase ARCO brand gasoline from Atlantic Richfield and resell it to the general public at a "markup." In the 1970's and 1980's, Atlantic Richfield implemented a number of controversial and revolutionary marketing practices. All of these novel practices, except for the one at issue, resulted in increased sales and profits to the retail dealer. In their complaint, plaintiffs acknowledge and even praise Atlantic Richfield for its business judgment in introducing these practices. However, the gravamen of the complaint is that one of these practices, the introduction of Oxinol as a blending agent in the gasoline, did not result in the same success as did the other practices. Plaintiffs contend that the Oxinol blended gasolines were not of the high quality which Atlantic Richfield represented them to be, and that the gasoline actually harmed automotive systems. Once the public became aware of the possibility that the Oxinol blended gasoline was harmful to automobiles,

according to plaintiffs, consumers stopped buying gasoline from the ARCO retail dealers. Allegedly, sales volume decreased dramatically.

Plaintiffs frame their complaint in counts alleging breach of warranty, breach of the implied duty to deal fairly, and fraudulent misrepresentation. The compensatory damages sought in all of the counts are based upon lost profits resulting from the alleged decrease in sales volume caused by the loss of customer satisfaction. This case does not involve a situation in which the dealer alleges that he had to pay a consumer for an injury to the consumer's automobile caused by the gasoline, nor is there an allegation that the dealers had to sell each gallon at a loss or a reduced price. Each gallon delivered to plaintiffs by Atlantic Richfield was sold to consumers at customary prices. Plaintiffs are basically contending, not that they were unable to sell gasoline delivered to them, but, that they would have sold more gasoline during the time period in question if Oxinol had not been added to the gasoline.

Preliminary objections in the nature of a demurrer should be sustained where it is shown that upon the facts pleaded recovery is not permitted by law. *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970). Under the facts pleaded by plaintiffs, Pennsylvania law permits no recovery. Recovery for loss of profits under Pennsylvania law is allowed where such loss was caused by a plaintiff's inability to use property damaged, destroyed or withheld by defendant's wrongful conduct. *See Kosco v. Hachmeister, Inc.*, 396 Pa. 288, 152 A.2d 673 (1959); *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1226 (3rd Cir.1970). However, the Pennsylvania Supreme Court has consistently distinguished lost profits in a situation where those losses are consequential damages accompanying another kind of economic injury from this type of speculative loss of potential customers.

The Pennsylvania Supreme Court has held that losses stemming from customer alienation, whether those losses are characterized as either "lost profits" or loss of good

will," cannot be ascertained with reasonable certainty and are not recoverable as a matter of law. In the seminal case of *Michelin Tire Co. v. Schultz*, 295 Pa. 140, 145 A. 67 (1929), decided under the Uniform Sales Act, the defendant was a Michelin tire dealer who refused to pay for tires he purchased from Michelin for resale. The dealer alleged that the tires were defective in that they were not of the quality asserted by Michelin. In his counterclaim, the dealer alleged a loss of profits he could have made on sales to customers who took their business elsewhere. The Court ruled that the counterclaim failed as a matter of law. All of the tires in question were in fact sold by the dealer to consumers. That the dealer would have made more sales but for the breach of warranty was regarded as too speculative and not a proper measure of damages. The true measure of damages for the breach would have been the difference between the value of the goods as warranted and as actually delivered. *Michelin*, 295 Pa. at 144, 145 A. at 68.

Although *Michelin* was decided under the Uniform Sales Act, the same result would be obtained under the Uniform Commercial Code. 13 Pa.Cons.Stats.Ann. § 1101 *et seq.* (Purdon 1984). The measure of damages for breach of warranty under the Code is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 13 Pa.Cons.Stat.Ann. § 2714(b). Plaintiffs make no claim that the value of each gallon of gasoline which they in fact purchased from Atlantic Richfield had a value less than that of the gasoline if it contained no Oxinol. The Pennsylvania Supreme Court in *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America*, 396 Pa. 506, 153 A.2d 472 (1959), again refused to expand the scope of damages to include recovery for the loss of customer good will. In *Rubin*, the buyer of plastic hoops which were not delivered attempted to recover as consequential damages the loss of profits he would have made had not his customers become dissatisfied. The Court

concluded that permitting recovery for the loss of good will in such situations would result in abolishing the limit of recovery of such damages in cases in which defective goods are sold. *Rubin*, 396 Pa. at 513, 153 A.2d at 477.

In *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), the Pennsylvania Supreme Court again reiterated this rule in a fact pattern quite similar to the one at hand. The defendant in *Kassab* sold cattle feed to the plaintiff, which feed contained an additive which caused miscarriages in cows and sterility in bulls. Defendant had knowledge that the plaintiff raised the cattle for their breeding qualities. Plaintiffs claimed as damages the diminution in value of cattle actually affected by the defective feed. The Court, in allowing these damages, carefully distinguished them from a "recovery for loss of good will to a business caused by *community knowledge that seller's defective products were once used or sold by that business.*" *Kassab*, 432 Pa. at 237, n. 12, 246 A.2d at 857, n. 12 (emphasis added). Again, the Court branded the latter measure of damages as too speculative.[2]

Plaintiffs are, in effect, trying to recover for a risk of doing business. Any retail dealer who sells one brand of product exclusively is naturally dependent to some extent on the marketing practices of the franchisor. As is evident in plaintiffs' complaint where the plaintiffs lauded other marketing practices of Atlantic Richfield, some such practices are more successful than others. If recovery is allowed for customer dissatisfaction under the instant set of circumstances, then retail dealers would be able to recover whenever the franchisor develops a new product or modifies an old product which, for whatever reasons, does not sell very well. The dealers would share in all the successes and would be able to sue for recovery for the failures. The franchisor, meanwhile, would lose twice: once when the

2. The federal courts in Pennsylvania have also held that Pennsylvania law does not allow recovery for losses caused by customer dissatisfaction. *See Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3rd Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *Argo Welded Products v. J.T. Ryerson*, 528 F.Supp. 583 (E.D.Pa.1981).

decrease in sales occurs, and again when it must make up for the lost profits of the franchisees.

The speculative nature of the damages at issue are particularly evident in this case. The purported class contains some 150 dealers. Even if a given dealer in that class can prove a decline in sales, other factors capable of affecting customer demand must be considered. Such factors include the following: the dealer's retail price policy, traffic patterns in the area, the dealer's hours of operation, the quality of the service, the appearance of the dealership, competition in the neighborhood, other services offered by competitors, and other services provided by the dealers (including the convenience stores and the quality of their operation). Isolating the decline in reputation from such factors would amount to speculation.

Plaintiffs' final two claims are also without merit. Plaintiffs contend that the complaint stated a valid cause of action for breach of the duty of good faith and fair dealing and for misrepresentation. However, in the misrepresentation count, plaintiffs failed to aver the alleged fraud with particularity as required. Pa.R.Civ.Proc. 1019(b). The averments merely alleged that the dealers justifiably relied upon information, supplied by Atlantic Richfield, which Atlantic Richfield should have known was false.

■ In the remaining counts, plaintiffs seem to be trying to convert this contract action into a tort action so that they can recover punitive damages. It is not clear from the complaint or appellant's briefs whether recovery is sought under a tort or contract theory. Plaintiffs fail to adequately define the elements of this new tort they seem to be creating. Rather, plaintiffs simply allege that Atlantic Richfield breached its duty of fair dealing in contractual relations by misrepresenting the nature and quality of the gasoline with Oxinol. However, this duty arises, not under tort law, but under contract law. The Uniform Commercial Code as enacted in Pennsylvania provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." 13 Pa.Cons.

Stat.Ann. § 1203. The Restatement (Second) of Contracts, section 205 also imposes such a duty on the parties to a contract. *See Atlantic Richfield v. Razumic,* 480 Pa. 366, 377, 390 A.2d 736, 742 (1978). Since we have held that the damages alleged by plaintiffs are speculative and unrecoverable as a matter of law, plaintiffs have again failed to state cause of action.

Therefore, we hereby affirm the order of the lower court dismissing the plaintiff's action.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I must respectfully dissent from the majority, which characterizes appellants' claim as one for loss of good will. I view appellants' claim as a request for lost profits occasioned by appellee's delivery of an unmerchantable product. I am of the opinion that the question of damages should have been permitted to go to the jury. Accordingly, the demurrer should not have been granted.

In support of my position, I would compare appellants' situation to that of the plaintiff in *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968). In that case, the defendant sold defective cattle feed to the plaintiff, which caused miscarriages in cows and sterility in bulls. Plaintiff raised the cattle for breeding purposes, and therefore, claimed as damages, the profits lost as a result of the diminution in value of cattle actually affected by the defective feed.

In allowing the damages the court said:

It does not matter whether the cattle lost value because they, in fact, could not reproduce, or because no one in the community would buy them out of a reasonable fear that the stilbestrol they ate might cause reproductive disorders. For, if either be true, it can fairly be said that Appellant's property has been damaged due to the feed sold by Appellees.

*Id.,* 432 Pa. at 236–37, 246 A.2d at 857.

In differentiating between lost profits and loss of good will, the court in *Kassab* stated:

Recovery for the diminution in value of specific property caused by a refusal of the buying community to assign a market value to that property equal to what it was worth prior to its being affected by the seller's defective product must not be confused with recovery for loss of good will to business caused by community knowledge that the seller's defective products were once used or sold by that business. Since the loss of good will cannot be measured by the diminution in value of any specific property belonging to the aggrieved buyer, unlike the present case, such good will loss is too speculative and hence not a compensable element of damages under such a 2–715 of the Code. (citations omitted).

*Id.* at 237 n. 12, 246 A.2d at 857 n. 12.

Likewise, in the case *sub judice*, appellants were unable to sell as much gasoline when it became known publicly that the gasoline was defective. During that period, sales plummeted. Appellants are only seeking the profits lost *during the period when the defective gasoline was used.* They do not claim that good will was lost such that they were unable to sell non-defective gasoline.

While the majority labels appellants' loss as "speculative", I would disagree. Although calculating damages may have been a problem in the past, and in certain cases, may still be a problem, I cannot see that it presents a problem here. Even in an instance where damages were denied as being too speculative, the court recognized that the future could bring considerable changes. In *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d. Cir.1970), the court stated:

This is not to say we approve the Pennsylvania view or believe it will be the Pennsylvania position in the future. Considering the advances made in techniques of market analysis and the use of highly sophisticated computers it may be that lost profits of this nature are no more speculative than lost profits from the destruction of a factor or hotel, and perhaps Pennsylvania will reconsider the reason for its rule in a future case. We are none-

theless required to apply the current rule in Pennsylvania.

*Id.* at 1227–28.

Further, a comparison of the business profits before and after the delivery of the unmerchantable gasoline should prove to be enlightening. *See, Bolus v. United Penn Bank,* 363 Pa.Super. 247, 525 A.2d 1215 (1987).

Thus, I would, as the court did in *Kassab,* supra, remand the cause to afford appellants an opportunity to demonstrate the amount of damages sustained as a result of appellee's delivery of an unmerchantable product.