**AAMCO TRANSMISSIONS, INC.**

v.

**William D. HARRIS.**

**Civ. A. No. 89–5533.**

United States District Court,
E.D. Pennsylvania.

March 13, 1991.

---

1142

Karen A. von Dreusche, Bala Cynwyd, Pa., for plaintiff.

Duane, Morris & Heckscher, Wayne A. Mack, Jr. and Nancy Conrad, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This case arises out of a franchise agreement between plaintiff, AAMCO Transmissions, Inc. (ATI) and defendant, William Harris.[1] ATI commenced this diversity action in June of 1989, alleging breach of the franchise agreement and violations of the Lanham Act. Harris has asserted a variety of counterclaims. Now before the court is ATI's motion for summary judgment on Harris' counterclaims. For the reasons discussed below, ATI's motion is granted in part and denied in part.

---

1. Plaintiff is a Pennsylvania corporation with its principal place of business in Pennsylvania. Defendant is a resident of the state of Washington.

The background facts are not in dispute. Harris and ATI entered into a franchise agreement on April 17, 1986. The terms of the agreement provided that ATI would permit Harris to use the AAMCO trademark and would provide training and assistance with advertising. In return, Harris would remit to ATI a portion of the profits earned from the operation of an AAMCO transmission shop located in Bremerton, Washington. Less than a month after Harris and ATI executed the franchise agreement, ATI learned that it was being investigated by the attorneys general of thirteen states, including Washington, about some of AAMCO's operational and customer service practices. The investigation culminated in consent judgments entered and made public on February 18, 1987. ATI informed its franchisees of the investigation by letter dated May 7, 1987.

Harris asserts seven counterclaims: 1) fraud; 2) breach of contract; 3) breach of implied covenant of good faith and fair dealing; 4) breach of fiduciary duty; 5) intentional interference with prospective contractual relations; 6) negligence; and 7) violation of sections 19.100.170 and 19.100.180 of the Washington Franchise Investment Protection Act (WFIPA). The principal thrust of these counterclaims is that ATI fraudulently failed to disclose the civil investigation before the agreement became binding.[2] Harris also alleges that ATI failed to comply with certain obligations under the franchise agreement, specifically to provide on-going training and assistance with advertising.

ATI has moved for summary judgment on all these counterclaims. For the reasons discussed in the following pages, we conclude that summary judgment should be granted on (1) the counterclaims for fraud, intentional interference with prospective contractual relations, and negligence, and the counterclaim under the WFIPA, because they are time-barred; and (2) the counterclaim for breach of fiduciary duty because it is insufficient as a matter of law. We further conclude that summary judgment should be denied on the counterclaims for breach of implied duty of good faith and fair dealing and breach of contract because there are material issues of fact to be resolved by a fact-finder.

DISCUSSION:

I.

ATI contends that several of Harris' counterclaims are time-barred. Harris learned of the investigation, at the very latest, within a day or so after May 7, 1987, the day on which ATI sent a letter to all AAMCO franchisees about the investigation. Harris asserted his counterclaims on September 18, 1989, when he filed his answer to ATI's complaint. Thus, two years and four months elapsed between the time that Harris became aware of the investigation and the time that he first asserted his claims against ATI.

■ We will first address the common law counterclaims for fraud, negligence, and intentional interference with prospective contractual relations. Then we will address the counterclaim arising under the Washington Franchise Investment Protection Act (WFIPA). In addressing these issues, we start from two interrelated premises. The first is that a federal court sitting in diversity must follow the choice of law rules prevailing in the state courts of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The second is that the courts of Pennsylvania generally treat statutes of limitations as "procedural," applying Pennsylvania's statutes of limitations not only to wholly domestic causes of action but also to causes

---

**2.** Harris asserts that (1) the document embodying the franchise agreement, although dated April 17, 1986, was not signed on that date and, (2) the document was not intended to become a binding agreement until certain conditions—in particular conditions having to do with Harris' obtaining financing—were met. Thus, Harris argues that ATI became aware of the civil investigation before the parties were bound by the franchise agreement. *See infra* Section III where the circumstances surrounding the timing of Harris' purchase of the franchise are explored in more detail.

of action arising in other jurisdictions[3] (unless, pursuant to Pennsylvania's borrowing statute, a Pennsylvania court is directed to apply a *shorter* limitation statute of another jurisdiction.[4])

## (A)

■ With these principles in mind, we first consider the counterclaims for fraud, negligence, and intentional interference with prospective contractual relations.

42 Pa.Cons.Stat.Ann. § 5524, a two-year statute of limitations, provides, in relevant part:

> The following actions and proceedings must be commenced within two years....
>
> (3) An action for taking, detaining or injuring personal property....
>
> (7) ... Any ... action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct

or any other action or proceeding sounding in trespass, including deceit or fraud....

42 Pa.Cons.Stat.Ann. § 5524(3), (7) (West Supp.1988). The claims for fraud and negligence are covered by section 5524(7). Section 5524(3) has been construed as applying to claims for intentional interference with prospective contractual relations. *Mazzanti v. Merck and Co., Inc.*, 770 F.2d 34, 36 (3d Cir.1985). Therefore, since Harris' claims for fraud, negligence, and intentional interference with prospective contractual relations were not commenced within two years, they are time-barred.

## (B)

Harris also asserts a counterclaim under the Washington Franchise Investment Protection Act (WFIPA).[5] He alleges that ATI violated various provisions of the WFIPA, 1) by failing to advise him that ATI was being investigated by the Washington at-

---

3. Harris does not dispute that the proper choice of law rule to apply is that of the forum state. However, he disagrees with the result, citing cases which state that Pennsylvania has adopted the "flexible conflicts methodology" to analyze conflict of law questions. Although he is correct in this regard, what he fails to take account of is that this relevant contacts analysis relates only to determining the application of substantive law and does not affect the method of determining the applicable statute of limitations. Furthermore, while Harris cites persuasive authority to demonstrate that the relevant contacts analysis has been applied in other circuits to determine the applicable statute of limitations, *e.g. Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482 (9th Cir.1987); *Montaup Elec. Co. v. Ohio Brass Corp.*, 561 F.Supp. 740 (D.R.I.1983), the law of this jurisdiction is settled and not consistent with those cases. *See Ross v. Johns-Manville Corp.*, 766 F.2d 823, 826 (3d Cir.1985) (applied Pennsylvania statute of limitations). *See also Cistone v. Ford Motor Co.*, 504 F.Supp. 328, 330 (E.D.Pa.1980) (rule that Pennsylvania courts ordinarily apply the statute of limitations of the forum state remained intact after Pennsylvania Supreme Court developed significant contacts test and interest analysis). *Cf. Bulkin v. Western Kraft East, Inc.*, 422 F.Supp. 437, 442 (E.D.Pa.1976) ("[u]nlike the choice of limitations law, a procedural matter, the choice of substantive law, under Pennsylvania conflicts rules, is governed by an interest analysis." (emphasis omitted)).

4. Pennsylvania's "borrowing statute" provides that "[t]he period of limitation to a claim accruing outside this Commonwealth shall be either

that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, *whichever first bars the claim.*" 42 Pa.Cons.Stat.Ann. § 5521(b) (Purdon 1981) (emphasis added).

5. Harris alleges that ATI violated two provisions of the WFIPA. Section 19.100.170 provides:

> It is unlawful for any person in connection with the offer, sale, or purchase of any franchise directly or indirectly:
>
> . . . . .
>
> (2) To sell or offer to sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading.
> (3) To employ any device, scheme, or artifice to defraud.
> (4) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person....

Section 19.100.180, titled "Relation between franchisor and franchisee," states in relevant part:

> Without limiting the other provisions of this chapter, the following specific rights and prohibitions shall govern the relation between the franchisor or subfranchisor and the franchisee:
> (1) The parties shall deal with each other in good faith....

torney general prior to Harris' purchase of the franchise; 2) by misrepresenting to him that ATI had lawful and established procedures and valuable good will that would assure a profitable franchise; and 3) by violating the WFIPA's duty of good faith in allowing a severe customer relations problem to develop and generally failing to protect the value of its trademark.

Harris argues that there is a limitations period that is built into the WFIPA under which this counterclaim is not time-barred. Although, as discussed above, the general rule is that federal courts sitting in Pennsylvania apply Pennsylvania statutes of limitations as a "procedural" matter, Harris argues that when a statute which creates a cause of action provides a limitations period within which the statutory cause of action must be brought, that provision is "substantive" and becomes part of the cause of action which the Pennsylvania courts would apply.

It is not necessary to decide this issue. The thrust of Harris' argument is that a violation of the WFIPA constitutes an unfair or deceptive practice under the Washington Unfair Business Practices Act (WUBPA) and, thus, the WFIPA violation would be governed by the WUBPA's four-year limitation period. However, because the provisions of the WFIPA that ATI allegedly breached are not the provisions designated as constituting an unfair or deceptive practice under the WUBPA, the WUBPA limitations period is not applicable to the Harris counterclaim under the WFIPA.[6]

■ Thus, we turn to what Pennsylvania statute of limitations would apply to this counterclaim. Because there is no express statute of limitations, there being no analogous Pennsylvania franchise law, one proceeds by analogy to find the appropriate

source for a statute of limitations. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). ATI suggests that either the two-year limitation applicable to common law actions for fraud or the one-year limitation contained in the Pennsylvania Securities Act would provide an appropriate limitation period.

Securities law does not provide an appropriate analogy from which to draw a statute of limitations applicable to Harris' counterclaim under the WFIPA. Although the Pennsylvania Securities Act, 70 Pa. Cons.Stat.Ann. § 1-401 (West Supp.1988), contains language almost identical to that in the WFIPA, the consistent distinction that has been made between securities and more participation-oriented investments like franchises precludes an analogy to securities law. When parties attempt to bring a claim concerning a franchise agreement under securities law, they usually argue that it is a species of "investment contract." However, Pennsylvania follows the United States Supreme Court's definition of the term "investment contract" in federal securities law, which has been held not to include franchise agreements.

In *Martin v. ITM/Intern Trading & Marketing*, 343 Pa.Super. 250, 494 A.2d 451, 453 (1985), the court held that where a plaintiff, in return for advancing money to the defendant for the purpose of purchasing gold bars, was, by agreement, to receive a demand note for the money advanced plus the right to a 25 percent return in profit, such agreement was a "security" within the meaning of the Pennsylvania Securities Act of 1972. The *Martin* court noted that in light of the dearth of Pennsylvania appellate cases examining such an "investment contract," federal case law could provide guidance, especially since the

---

**6.** Section 19.100.190 of the WFIPA provides, "[t]he commission of any unfair or deceptive acts or practices or unfair methods of competition prohibited by RCW 19.100.180 ... shall constitute an unfair or deceptive act or practice under the provisions of chapter 19.86 RCW [WUBPA]." Section 19.100.180(1), on which Harris bases his counterclaim, merely provides that "[t]he parties shall deal with each other in good faith." By contrast, it is section 19.100.-

180(2) that specifies what conduct will constitute an "unfair or deceptive act or practice." Thus, even if section 19.100.190's cross-reference to the WUBPA makes the WUBPA's four-year limitation period controlling on claims of unfair or deceptive acts or practices under the WFIPA section 19.100.180, that limitation period would nonetheless not govern Harris' claim since he only alleges that ATI violated section 19.100.180(1).

Pennsylvania Securities Act contained a definition of "security" that was very similar to the definitions of "security" set forth in the Securities Exchange Act of 1933 and the Securities Exchange Act of 1934. Both the Pennsylvania and federal definitions included the term "investment contract." Thus, the *Martin* court looked to the definition of "investment contract" enunciated in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

In *SEC v. W.J. Howey Co.*, the Supreme Court stated that an investment contract is one in which a person invests money "in a common enterprise and is led to expect profits *solely* from the efforts of a promoter or a third party." *Id.* at 298–99, 66 S.Ct. at 1103 (emphasis added.) Because of the level of the investor's participation in franchises and similar enterprises, it has been held that they are not "securities" and, thus, not governed by securities law. *See, e.g., Cole v. Ford Motor Co.*, 566 F.Supp. 558, 564–65 (W.D.Pa.1983), (automobile dealership requiring significant managerial responsibilities on part of plaintiff not "investment contract" and thus not "security" within meaning of Federal Securities Exchange Act of 1934); *A.B.A. Auto Lease Corp. v. Adam Industries, Inc.*, 387 F.Supp. 531, 534 (E.D.Pa.1975) (franchise agreement not "investment contract" within meaning of either Securities Exchange Act of 1934 or Pennsylvania Securities Act of 1972; court assumed that since Pennsylvania Securities Act did not contain definition of "investment contract" Pennsylvania legislature intended term to have judicially evolved definition).[7]

In the instant case, Harris' operation of the franchise required a high level of participation on his part. Furthermore, Harris was not an uninformed investor, but rather an educated and sophisticated business man who understood the franchise agreement.[8] Thus, we must conclude that the Pennsylvania Securities Act is not an appropriate source from which to draw a statute of limitations.

■ An action for common law fraud is, in contrast, an apt analogy to Harris' counterclaims under the WFIPA. It can appropriately serve as a source for a limitations period to govern Harris' claim under the WFIPA. Harris claims that, in connection with the sale of the franchise, ATI made misrepresentations and omissions of material fact and engaged in conduct that would operate as fraud or deceit. This conduct, Harris maintains, violated section 19.100.-170(2)–(4) of the WFIPA. This claim is based mainly on ATI's failure to inform Harris of the civil investigation. Furthermore, Harris contends that ATI also violated its ongoing duty to deal in good faith under section 19.100.180(1) by failing to inform him of the severe customer relations problems and by failing to protect its trademark. Harris states that his alleged injury was caused by his reliance on ATI's conduct.

These claims are almost identical to those asserted under Harris' claim for fraud. Thus, 42 Pa.Cons.Stat.Ann. § 5524(7), providing a two-year limitation for fraud actions, applies.

(C)

Application of Section 5524's two-year limitation to the instant case makes it clear that Harris' counterclaims of fraud, negligence, intentional interference with prospective contractual relations, and violation of the WFIPA are time-barred. Since more than two years elapsed between the time that Harris first became aware of his potential claims and the time he brought suit, the counterclaims for fraud, negligence, intentional interference with prospective con-

---

7. Other circuits also follow the Supreme Court's definition of "investment contract." *See, e.g. Mr. Steak, Inc. v. River City Steak, Inc.*, 460 F.2d 666, 670 (10th Cir.1972) (franchise not "security" within meaning of Securities Exchange Act of 1933 or Colorado Securities Act because franchisee neither uninformed investor nor inactive in business); *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 641 (9th Cir.1969) (distribu-

torship not "security" within meaning of Washington Securities Act because of participation of investor).

8. *See* this court's Memorandum dated June 13, 1990 at 7, which upheld the validity of the franchise agreement's jury waiver provision.

tractual relations and violation of the WFI-PA are time-barred.[9]

## II.

■ Harris' counterclaim for breach of fiduciary duty, although not time-barred, must be dismissed because no such duty exists as a matter of law. The courts of this district have concluded in similar cases that a franchise relationship is not fiduciary in nature. *Coxfam, Inc. v. AAMCO Transmissions, Inc.*, No. 88–6105, 1990 WL 131064 (E.D.Pa. September 6, 1990) (court declined to hold, absent determination by Pennsylvania courts, that fiduciary duty of franchisor required disclosure of nonpublic negotiations by ATI during civil investigation); *AAMCO Transmission, Inc. v. Graham*, Nos. 89–4976, 89–6379, 1990 WL 55675 (E.D.Pa. April 26, 1990) (no fiduciary duty arose on part of franchisor based on operations of franchisor's customer relations department).[10] Neither the franchise relationship, nor the agreement by which it is formed, can supply a basis

for Harris' counterclaim for breach of fiduciary duty.

## III.

Next we consider the validity of the counterclaim for breach of an implied duty of good faith and fair dealing.[11] Harris alleges that ATI breached a covenant of good faith and fair dealing by failing to advise him of the investigation, by failing to provide him with procedures that would assist him in the successful operation of his center and by training him in sales procedures that were improper and thus detrimental to his business. For the reasons discussed below, ATI's motion for summary judgment on this counterclaim must be denied.

■ Regarding the allegation that ATI failed properly to train Harris or assist in the operation of the franchise, the scope of these obligations is encompassed by the express terms of the franchise agreement and cannot be the subject of any implied covenant.[12] *See e.g., Grand Light & Sup-*

---

9. Pennsylvania's borrowing statute (*supra,* note 4) is of no help to Harris. Because Washington's three-year statute of limitations for fraud, negligence, and intentional interference with prospective contractual relations (Wash.Rev. Code Ann. § 4.16.080) is longer than the Pennsylvania two-year statute, it is the Pennsylvania statute that governs.

10. *See also O'Neal v. Burger Chef Systems, Inc.,* 860 F.2d 1341, 1349 (6th Cir.1988) (and cases cited therein at n. 4); *Premier Wine and Spirits v. E. & J. Gallo Winery,* 846 F.2d 537, 540–41 (9th Cir.1988).

11. As an initial matter, ATI contends that this claim is time-barred. The contention is unpersuasive. ATI argues that "good faith and fair dealing" is just another label for the actions that are the subject of the counterclaims for negligence, fraud and intentional interference with prospective contractual relationship. ATI maintains that, because the claims are "inextricably intertwined," all claims flowing from the same conduct should be subsumed under the shorter two-year limitation period applicable to the other claims. *See Carpenter v. Dizio,* 506 F.Supp. 1117 (E.D.Pa.1981); *Gagliardi v. Lynn,* 446 Pa. 144, 285 A.2d 109 (1971). However, under Pennsylvania law, which ATI concedes (in fact argues) is the applicable law, it is fairly settled that where a good faith duty exists, "it arises under the law of contracts, not under the law of torts." *Creeger v. Mid–State Bank,* 385 Pa.Super. 30, 35, 560 A.2d 151, 153 (1989). *See also Atlan-*

tic Richfield Co. v. Razumic, 480 Pa. 366, 378 n. 7a, 390 A.2d 736, 742 n. 7a (1978); *AM/PM Franchise Ass'n v. Atlantic Richfield Co.,* 373 Pa.Super. 572, 579, 542 A.2d 90, 94 (1988); *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 505 n. 4, 536 A.2d 1375, 1379 n. 4 (1988), *allocatur granted,* 518 Pa. 647, 544 A.2d 959 (1988). Hence, the appropriate statute of limitations is that governing contract actions. The Pennsylvania statute subjects contract actions to a four-year limitation period. *See* 42 Pa.C.S.A. § 5525 (West Supp.1988). It was only a little more than two years and four months between the time that Harris first became aware of the investigation and the time he filed his answer in which he asserts this counterclaim. Thus, this counterclaim is timely.

12. ¶ 6.1 of the franchise agreement provided that "[p]rior to the opening of his center AAMCO will make available to the Franchisee its customary training and indoctrination course concerning the operation of an AAMCO center" and goes on to state that after the opening of the center, ATI "may provide" further training programs. In the Preamble, the franchise agreement stated that AAMCO had developed methods, techniques and systems for the operation of the centers. ¶ 6.1 further obligated AAMCO to make its know-how available to its franchisees.

It is not disputed that ATI made training available to Harris prior to his taking over the franchise and that Harris waived his attend-

*ply Co., Inc. v. Honeywell, Inc.,* 771 F.2d 672, 679 (2d Cir.1985) (implied good faith obligation does not abrogate effect of contractual terms); *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129, 138 (5th Cir.1979) (when contract contains express termination-at-will clause, court will not imply different term); *General Aviation, Inc. v. Cessna Aircraft Co.,* 703 F.Supp. 637, 643 (W.D.Mich.1988) (implied duty of good faith cannot be employed to override express contract terms).

■ However, with regard to ATI's failure to inform Harris of the investigation, an implied duty of good faith and fair dealing existed that may have required ATI to disclose such information. Pennsylvania courts have held that there is an implied duty of good faith and fair dealing in the franchise relationship. To be sure, the cases decided to date in the Pennsylvania Supreme Court and the Pennsylvania Superior Court have identified this duty only in the context of the termination of franchise agreements. But those discussions have not in terms limited the duty to that context.

In *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 378, 390 A.2d 736, 742 (1978) the Pennsylvania Supreme Court held that a franchisor has a duty to act in good faith and with commercial reasonableness when terminating a franchise agreement. The court stated that the franchisor could not arbitrarily terminate the franchise agreement "[c]onsistent with ... Arco's obligation to deal with its franchisees in good faith and in a commercially reasonable manner" *Id.* The court also relied, in part,

on the Restatement (Second) of Contracts, § 231 (now § 205), which, as the court said, imposes a general "standard of good faith on contracting parties." *Id.* n. 7a. The Restatement (Second) of Contracts § 231 (now § 205) states, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See also Loos & Dilworth v. Quaker State Oil Refining Corp.,* 347 Pa. Super. 477, 487, 500 A.2d 1155, 1160 (1985) (franchisor must act in good faith and commercially reasonable manner when terminating franchise agreement).

A recent case provides further guidance as to the scope of the good faith duty in the franchise relationship. In *Creeger Brick & Bldg. Supply, Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151 (1989), the Superior Court held that a lending institution had not breached any implied duty of good faith by negotiating terms favorable to it on a loan. In deciding the issue, the court noted that an implied contractual duty of good faith had been recognized in limited situations and stated, "[m]ost notably a duty of good faith has been imposed upon franchisors *in their dealings with franchisees.*" *Id.* at 35, 560 A.2d at 153–54 (emphasis added). In this light—and given the breadth of the Restatement language, on which the Pennsylvania doctrine is based—it seems unlikely that the Pennsylvania appellate courts will limit the franchisor's implied duty to deal in good faith to situations of franchise terminations when the issue is squarely presented.[13]

ance, choosing instead to participate in a shortened program. *See* Harris Dep.Tr. at 164–65. It is also not disputed that ATI offered technical training classes to Harris after he took over the franchise, but he chose not to participate. *See* Harris Dep.Tr. at 102.

Regarding ATI's obligation to provide assistance in operation of the franchise, the scope of its obligation is expressly provided in the franchise agreement. For example, the Preamble to the agreement provides that "AAMCO makes its experience and know-how available to all its Franchisees in order to assist them in opening and operating a successful AAMCO center. AAMCO makes this and other means at its disposal available to aid in the management, financing and merchandising of the new Fran-

chisee's center." ¶ 6.1 also provides that "AAMCO agrees to make available to Franchisee any and all improvements and changes to the AAMCO merchandising system to the same extent and in the same fashion as they are made available to all Franchisees of AAMCO" and also that AAMCO will assist franchisees in the design and purchase of advertising.

13. It must be forthrightly acknowledged that this prophecy with respect to the law of Pennsylvania is discrepant from that of a greatly respected colleague, Judge O'Neill. *See Coxfam, Inc. v. AAMCO Transmission, Inc.,* No. 88–6105, 1990 WL 131064 (E.D.Pa. Sept. 6, 1990).

A binding contract existed between ATI and Harris by June 2, 1986, at the very latest, when ATI designated Harris as owner of the franchise in its internal records. *See* Defendant's Memorandum at 2–6. ATI did not, however, inform Harris of the investigation until May 7, 1987. Thus, there were approximately eleven months during which ATI's implied duty of good faith and fair dealing may have required it to disclose this information. It is necessary to leave to a fact-finder the determination of whether ATI's failure to disclose the investigation breached an implied covenant of good faith and fair dealing.

## IV.

■ ATI's motion for summary judgment on the counterclaim for breach of contract must also be denied because there are genuine issues of material fact that preclude granting summary judgment. The parties do not generally disagree that certain provisions imposed certain obligations.[14] Their main point of dispute is factual, i.e., whether ATI breached the terms of the agreement.

Harris asserts that ATI breached the franchise agreement by failing to protect the AAMCO trademark or provide Harris on a continuing basis with training, improvements and changes to the merchandising system, assistance in the management of their centers and assistance in advertising. ATI responds to this claim by asserting its compliance with its obligations to provide training, improvements and assistance with the center and advertising. Basically, ATI points to various franchise agreement provisions as defining the extent of its obligation to Harris, and then claims that it fully complied with those terms. *See* Plaintiff's Memorandum at 33–38.

Harris, in turn, sets forth evidence to show that ATI breached specified provisions of the agreement. In addition to alleging that ATI did not provide him training on a continuing basis, Harris also points to the civil investigation and the contents of the consent judgment as evidence that ATI did not develop adequate systems of merchandising and did not protect its trademark. *See* Defendant's Memorandum at 43–46.

Harris argues that ATI did not, as it had agreed 1) develop adequate systems for operation of transmissions centers; 2) assist in the operation of the franchise; 3) provide training to Harris in the course of operation of the franchise; 4) make available improvements and changes in the merchandising system; and 5) assist with advertising. Conversely, ATI alleges that it fully complied with its obligations under the agreement, especially with regard to making available on-going training and improvements in the merchandising system.

Such disputes as to material facts preclude summary judgment. *See AAMCO Transmissions, Inc. v. Graham*, Nos. 89–4976, 89–6379, 1990 WL 55675 (E.D.Pa. April 26, 1990). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 251, 255, 106 S.Ct. 2505, 2511, 2513, 91 L.Ed.2d 202 (1986).

## CONCLUSION:

For the foregoing reasons, we conclude that Harris' counterclaims for fraud, negligence, intentional interference with prospective contractual relations and violation of the Washington Franchise Investment Protection Act are barred by the Pennsylvania two-year statute of limitations, Sections 5524(3) and 5524(7); that Harris'

---

**14.** The one exception is whether ATI undertook an affirmative obligation to "protect the AAMCO trademark". Harris maintains that the AAMCO name/trademark had value in itself and that, because of ATI's alleged fraudulent practices, the actual value of that trademark diminished, to his disadvantage as the bearer of that trademark. Harris contends that a duty to protect the trademark existed as a matter of law. He asserts that the Lanham Act places "an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his mark by his licensees." *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 366 (2d Cir.1959). Harris further argues that as a matter of contract law a duty to protect the trademark exists implicitly. Conversely, ATI argues that no express contractual obligation existed and that implication of such a term was precluded by the existence of an express term regarding the trademark.

**1150**

counterclaim for breach of fiduciary duty is, under the facts alleged, not a cognizable Pennsylvania cause of action; and that Harris' counterclaims for breach of implied covenant of good faith and fair dealing and breach of contract cannot be dismissed because genuine issues of material fact preclude the granting of summary judgment.