SAROKIN, Circuit Judge,
dissenting.
I dissent primarily because I cannot conclude that Congress intended the Amendments Act to extinguish pending suits that were timely instituted in accordance with then-applicable statutes of limitations simply because they would not have satisfied the statute of limitations of the forum in which the underlying nuclear accident occurred. Nor can I conclude that Congress intended that certain pending claims survive while other identical ones cease to exist as a result of limitations periods that did not apply on the day those claims were filed. Certainly such a result is inconsistent with Congress’s intent to promote “‘equitable and uniform treatment of victims.’ ” TMI II, 940 F.2d at 861 (quoting H.R.Rep. No. 104, 100th Cong., 1st Sess., pt. 1, at 18, 29 (1987)).
I agree with the majority that the jurisdictional provision, the choice-of-law provision, and the definition of “public liability action” contained in section 11 apply retroactively to lawsuits that were pending when the Amendments Act was passed. Because the majority’s understanding of that retroactive application sweeps too broadly, however, I respectfully dissent.
It is well established that “[a] law is retrospective if it ‘changes the legal consequences of acts completed before its effective date.’ ” Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987)(quoting Weaver v. Graham, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)). Thus, retroactive legislation includes “ ‘all statutes, which, though operating only from their passage, affect vested rights and past transactions.’ ” Id. (quoting Society for the Propagation of the Gospel v. Wheeler, 22 F.Cas. 756, 767 (No. 13, 156)(CCDNH 1814))(empha-sis added). In the words of Justice Story,
“every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective .... ”
Id. (citation omitted). Nevertheless, “deciding when a statute operates ‘retroactively’ is not always a simple or mechanical task.” Landgraf v. USI Film Products, 511 U.S. 244,-, 114 S.Ct. 1483, 1498, 128 L.Ed.2d 229 (1994). Ultimately, whether a particular application is retroactive “depends upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated.” Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 857 n. 3, *1119 110 S.Ct. 1570, 1588 n. 3, 108 L.Ed.2d 842 (1990)(Scalia, J., concurring).
In this case, Congress expressly stated that the Amendments Act “shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act.” 42 U.S.C. § 2014 (emphasis added). I agree with the majority that the term “nuclear incidents” includes pending actions arising from such incidents. What is unclear from the statute is how exactly the “shall apply” language should be interpreted in the context of pending actions.
The statute itself offers no guidance on this point. As a theoretical matter, however, retroactivity can be understood in one of two ways. First, it can be understood as the majority apparently construes it: as a rewriting of history. Under this theory, section 20 reaches into the past to transform pending lawsuits as of their inception, undoing and rewriting all subsequent proceedings and applying new law as though it had existed from the date of filing. This theory engenders a historical fiction pursuant to which plaintiffs’ suits were public liability actions when they were filed in 1985, governed by Pennsylvania substantive law and subject to original federal jurisdiction, although the Amendments Act did not take effect until three years later.
Alternatively, the Amendments Act can be seen as retroactive in the more limited sense that it “attaches new legal consequences to events completed before its enactment.” Landgraf, 511 U.S. at-, 114 S.Ct. at 1499. This theory would mean simply that all pending actions asserting public liability were transformed on August 20, 1988 into public liability actions, and that the federal courts acquired original jurisdiction over those actions as of, but not prior to, that date.
Either interpretation of retroactivity is acceptable as a theoretical matter. It is our task to determine which is the correct one under the circumstances of this case.
I conclude that the latter interpretation of retroactivity under section 20 is the correct one, for several reasons. First and foremost, applying the Amendments Act to pending cases from August 20, 1988 forward accomplishes the goals that Congress intended the retroactivity provision to accomplish by defining the pending Three Mile Island cases as public liability actions and providing for their removal to federal court and litigation under federal substantive law.
Second, where, as here, the statute is ambiguous as to the appropriate scope of retro-activity, I believe that the well-established presumption against statutory retroactivity requires interpreting that scope narrowly. In this case, the statute neither states explicitly that the substantive law of the state in which the incident occurred applies “retroactively” to pending actions nor offers any guidance as to how the language “shall apply” should be interpreted in the context of a pending action. It is ambiguous as to whether section 11 applies to pending actions as of August 20, 1988, or whether, as the majority concludes, it applies to such actions as of their inception. In the absence of explicit Congressional instruction, I believe that the principles underlying the anti-retroactivity presumption make the former interpretation far more appropriate than the sweeping approach to retroactivity enunciated by the majority.[1]
Third, this interpretation eliminates the strained historical fiction on which the majority opinion, by necessity, must be based, thereby providing a more rational analytic framework for effectuating Congress’s intent and leading to a more equitable result. For the most part, the practical effect of the retroactivity provision is the same under either interpretation; in either case, rulings made prior to the passage of the Amendments Act on the basis of substantive law which no longer applies can be modified to *1120 conform to the new governing law of the case. Causes of action recognized in the filing state but not in the forum state can be dismissed. Rules of evidence, burdens of proof, and jury instructions all can be adjusted to accommodate the law of the forum. Under the majority’s interpretation, these adjustments would be made by adopting a fiction that Pennsylvania law applied from the beginning and then relitigating the entire case accordingly. Under my interpretation, these adjustments can be made simply by applying Pennsylvania law after August 20, 1988 to motions, new or renewed, brought by the parties. In other words, after August 20, 1988, a party can move to dismiss a claim that no longer has any legal basis, renew a summary judgment motion that failed previously but might now succeed, or seek reconsideration of prior evidentiary rulings that do not stand up under the new governing law. Thus, while the two interpretations require different procedures for implementation, the ultimate effect on the parties is, for the most part, the same in both cases.
In the statute of limitations context, however, the difference in theory between the two interpretations translates into a crucial difference in outcome. The historical fiction on which the majority’s theory is premised forces the majority to conclude that plaintiffs’ action, although filed within the Mississippi statute of limitations, is now barred by the Pennsylvania statute of limitations — an inequity which I believe contravenes Congress’s intent and which my theory avoids. Statutes of limitations are uniquely concerned with a specific point in time: the date on which the complaint was filed. While a defendant can raise the statute of limitations as a defense at any time during the course of a lawsuit, the relevant question for the court is always whether, at the time the case was filed, the applicable statute of limitations was satisfied. Because the majority reasons that section 20 requires extending Pennsylvania law back in time to the inception of plaintiffs’ action, it concludes that Pennsylvania’s statute of limitations applied — and was violated — at the time the suit was filed. However, at the time it was filed, plaintiffs’ lawsuit was not a public liability action. As a result, I conclude that it was governed at the time it was filed by Mississippi, not Pennsylvania, law. Although the substantive law of Pennsylvania governs plaintiffs’ ease from August 20, 1988 forward, the statute of limitations was satisfied or violated back in 1985, when Mississippi law applied. At that time, under the applicable law, I conclude that it was satisfied.
Finally, the interpretation I endorse conforms with the “settled policy” of federal courts to “avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question,” Gomez v. United States, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989), by eliminating the constitutional questions of due process raised by the majority’s interpretation. If the Amendments Act applies to pending actions from August 20, 1988 forward, then there is no issue as to whether the Act violates the due process rights of plaintiffs to pending lawsuits, because the Pennsylvania statute of limitations does not apply to deprive plaintiffs of their cause of action.
As a result, I conclude that the retroactivity provision of the Amendments Act does not rewrite history as applied to pending actions, but rather operates by changing the ground rules midway through the game, altering the legal status and governing law of pending actions from the time of its enactment forward.
The majority proffers that it agrees with this interpretation, and denies that its interpretation of section 20 engenders a rewriting of history.[2] Nevertheless, while conceding *1121 that the definition of public liability action, the choice-of-law provision, and the original jurisdiction provision apply to pending cases from August 20, 1988 forward, the majority concludes that plaintiffs’ lawsuit was filed in violation of Pennsylvania’s two-year statute of limitations. Both positions cannot be correct. In effect, the Amendments Act drew a bright line down the middle of this lawsuit on August 20, 1988, dividing the case into two distinct parts. Prior to August 20, 1988, the suit was generic and Mississippi law governed; since that date, it has been a public liability action and Pennsylvania law governs. I think it logically inconsistent to hold, as the majority does, that plaintiffs’ suit was not a public liability action when it was filed, and yet conclude that it was required at the time it was filed to satisfy the Pennsylvania statute of limitations — a statute that only applies to this action in its public liability incarnation.[3] Either plaintiffs’ lawsuit was a public liability action when it was filed, subject to federal jurisdiction and Pennsylvania’s statute of limitations, or it was not.
Therefore, in my view it is the majority, and not I, who seeks to treat the statute of limitations differently from all other “substantive rules for decision” of Pennsylvania law. While concluding that Pennsylvania substantive law operates on plaintiffs’ lawsuit from August 20, 1988 forward, the majority carves out an exception for the statute of limitations, allowing it to reach back in time — crossing the imaginary line drawn by the Amendments Act — to operate on the suit on the day it was filed. This treatment of the statute of limitations clashes directly with the majority’s overarching theory of the ease. Statutes of limitations, as discussed above, can only be violated (or satisfied) at one specific point in time — the day on which the suit was filed — notwithstanding that such violations can be called to the attention of the court at any point during the pendency of a lawsuit. Under the majority’s own interpretation of section 20, this case was not a public liability action when it was filed, and Pennsylvania law did not apply. As a result, the majority’s treatment of the statute of limitations cannot be reconciled with its interpretation of the meaning and effect of the Amendments Act.
The majority seeks to justify this illogical result in terms of congressional intent. It is not at all clear, however, that Congress intended the choice-of-law provision of the Amendments Act to encompass statutes of limitations. While it is well established that statutes of limitations are characterized as substantive law for purposes of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), see Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), this does not mean that they are considered substantive in other contexts. Indeed, in holding that statutes of limitations are substantive for purposes of the Eñe doctrine, such that federal courts sitting in diversity must apply state statutes of limitations, the Supreme Court confined its analysis narrowly to the context of Erie:
It is therefore immaterial whether statutes of limitation are characterized either as ‘substantive’ or ‘procedural’ in State court opinions in any use of those terms unrelated to the specific issue before us. Eñe R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. In essence, the intent of that decision was to ensure that, in all cases where a federal cowrt is exercising jurisdiction solely be *1122 cause of the diversity of citizenship of the parties, the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.
Guaranty Trust Co. of New York, 326 U.S. at 109, 65 S.Ct. at 1470 (emphasis added).
In this case, the majority opinion’s conclusion that “the statute of limitations is a substantive rule of decision,” Majority Opinion, at 1112, is based entirely on cases holding that statutes of limitations are substantive rather than procedural for purposes of Erie. The characterization of statutes of limitations as substantive for Erie purposes, however, was not based on an assessment of their procedural or substantive nature in the abstract but rather on their impact on the federalism concerns that Erie’s rough procedural/substantive distinction was intended to address. See Guaranty Trust Co., 326 U.S. at 109, 65 S.Ct. at 1470.
In this case, by contrast, there is no federalism concern at issue and no balance of power between federal and state courts to be maintained. The cause of action is federal, and the only question is whether Congress intended the term “substantive rules for decision” to include statutes of limitation. The legislative history of the Amendments Act is silent on this point; indeed, there is nothing to indicate that Congress even considered the status of statutes of limitations under that Act, much less intended to include them as substantive rules of decision. Moreover, a review of Pennsylvania case law makes clear that the courts of Pennsylvania “generally treat statutes of limitations as ‘procedural.’ ” AAMCO Transmissions, Inc. v. Harris, 759 F.Supp. 1141, 1143-44 (E.D.Pa.1991)(footnotes omitted); Boyle v. State Farm Mutual Automobile Ins. Co., 310 Pa.Super. 10, 456 A.2d 156, 162 (1983); Altoona Area Sch. Dist. v. Campbell, 152 Pa.Cmwlth. 131, 618 A.2d 1129, 1134 (1992). This strikes me as a strong indication that the courts of Pennsylvania would not consider the phrase “substantive rules for decision” to include Pennsylvania’s statutes of limitations.[4] For these reasons, I do not think that congressional intent with respect to statutes of limitations is clear enough to sustain the majority’s logically inconsistent conclusion that plaintiffs’ suit is time-barred.[5] See Majority Op., at 1112 (“Congress could have exempted statutes of limitations from retroactive application, but it did not.”).
*1123 Nor is there any evidence in the legislative history or elsewhere that Congress intended the sweeping retroactivity that the majority endorses. On the contrary, the legislative history indicates that the Amendments Act was based on the lessons of claims resulting from the TMI accident:
The experience with claims following the TMI accident demonstrates the advantages of the ability to consolidate claims after the nuclear incident. Attorneys representing both plaintiffs and defendants in the TMI litigation testified ... that the ability to consolidate claims in federal court would greatly benefit the process for determining compensation for claimants.... The availability of the provisions for consolidation of claims in the event of any nuclear incident ... would avoid the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions that may occur in the absence of consolidation.
S.Rep. No. 218, 100th Cong., 2d Sess. 13, reprinted in 1988 U.S. Cong. & Admin. News 1476, 1488; In re TMI Litig. Cases Consol II, 940 F.2d 832, 853 n. 18 (3d Cir.1991)(stating that Congress’ decision to enact the Amendments Act was based on the lessons of litigation resulting from the TMI accident). This indicates to me that Congress contemplated providing a mechanism for consolidating TMI cases to facilitate then-continued litigation. This forward-looking approach evidenced by the legislative history is wholly inconsistent with a congressional desire to extinguish those suits on technical grounds.
Because I conclude that retroactive application of the choice-of-law provision means simply that Pennsylvania substantive law applies to and governs the instant litigation from August 20, 1988 forward, I respectfully dissent from the majority’s far-reaching and overly broad interpretation of section 20 and from its conclusion that Pennsylvania’s two-year statute of limitations reaches back in time to bar plaintiffs’ suit. Accordingly, I would reverse.

. This is not to suggest that the presumption against retroactive legislation governs this case; on the contrary, I am in agreement with the majority that Congress intended the Amendments Act to apply retroactively. See Majority Op. at 1112-13 n.6. The principles underlying the anti-retroactivity presumption are relevant, however, insofar as they evince a cautious and conservative approach to retroactivity that is fundamental to our legal system. Where, as here, there is a question as to the intended scope of retroactivity, I believe that the principles underlying the anti-retroactivity presumption urge us to interpret that scope narrowly.

. The majority's understanding of the term "historical fiction” is different from what I intend. In denying that its interpretation of the Amendments Act engenders a historical fiction, the majority states that it “do[es] not create a historical fiction that plaintiffs filed suit on any day other than that on which they actually filed." This rebuttal is wide of the mark. My point is simply this: (1) When plaintiffs filed their suit, it was not a public liability action — indeed, that cause of action did not yet exist; (2) When plaintiffs filed their suit, it was not governed by Pennsylvania law; (3) When plaintiffs’ filed their suit, it satisfied the applicable statute of limitations; (4) On August 20, 1988, plaintiffs' suit was transformed into a public liability action, governed by *1121 Pennsylvania substantive law and subject to federal jurisdiction; (5) In order to conclude that plaintiffs' suit was filed in violation of the Pennsylvania statute of limitations, the majority must first conclude that the Pennsylvania statute of limitations applied to plaintiffs' suit at the relevant time; the day on which it was filed. Because Pennsylvania law applies only to public liability actions, however, the majority’s holding in this case cannot be sustained without the historical fiction that plaintiffs’ suit was a public liability action on the day it was filed.

. As explained infra, I question whether Congress intended the phrase "substantive rules of decision” to include statutes of limitations in the first place. Because I think that the majority’s argument fails even if the Amendments Act encompasses statutes of limitations, however, I will assume for now that the Pennsylvania statute of limitations is substantive law in this context.

. The majority cites AAMCO Transmissions, Inc. v. Harris, 759 F.Supp. 1141, 1143-44 (E.D.Pa.1991), for the proposition that Pennsylvania courts generally apply Pennsylvania’s statute of limitations to causes of action that arose in other jurisdictions as well as to causes of action that arose in Pennsylvania. Majority Op., at 1112 n.5. This may well be true, but it is irrelevant to the issue at hand, for two reasons. First, Pennsylvania law regarding the statute of limitations has no bearing on the question before us: whether section 20 — a federal statute — requires us to apply Pennsylvania's statute of limitations retroactively to bar the underlying actions. This is purely a question of federal law, and neither the courts nor the statutes of Pennsylvania can provide the answer. Second, even if Pennsylvania law were relevant to the issue at hand, the language quoted by the majority is inapposite. The quoted language describes the way in which Pennsylvania courts treat cases which are filed in Pennsylvania in the first instance but which are based on events that took place ("arose”) outside the jurisdiction — not cases such as this one which were filed in other jurisdictions and later transferred to Pennsylvania. It tells us nothing about the way Pennsylvania courts would treat a unique and highly unusual case such as this one, and provides no basis for inference.

. Contrary to the majority’s assertion, it is not true that “achieving substantially the same outcome in all public liability actions, regardless of where filed, necessitates treatment of statutes of limitations as ‘substantive rules for decision.' ” Majority Op., at 1112 n.5. Significantly, a finding that Congress did not intend the term "substantive rules for decision” to include statutes of limitations would not mean that there is no statute of limitations on public liability actions. Rather, in the absence of an express command from Congress, federal courts "ordinarily do not assume that Congress intended that there be no time limit on such actions at all; rather, our task is to ‘borrow’ the most suitable statute or other rule of timeliness from some other source." Del-Costello v. Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). If there is no indication in the legislative history as to what statute of limitations Congress intended the courts to apply to a given type of action, the "fallback rule of thumb” is to “apply the most closely analogous statute of limitations under state law.” Id. at 158 & n. 12, 103 S.Ct. at 2287 & n. 12. If the relevant state statute of limitations is an "unsatisfactory vehicle!] for the enforcement of federal law,” however, courts may borrow timeliness rules from federal law — "either express limitations periods from related federal *1123 statutes, or such alternatives as laches.” Id. at 161, 162, 103 S.Ct. at 2289. Thus, there are two possible outcomes if Congress did not intend for "substantive rules of decision" to include statutes of limitations and thus did not expressly provide for a statute of limitations for public liability actions: (1) the courts would apply state statutes of limitations anyway (although they would not fall under the rubric of section 20); or (2) the courts would apply a uniform statute of limitations to public liability actions drawn from federal law. In either event, all public liability actions arising from a single occurrence would be subject to the same statute of limitations, with the exception of cases already pending when the Amendments Act was passed.